Baker v. The State.

## BAKER v. THE STATE.

1. TAXES: *On callings and pursuits.*
  There is no restraint upon the power of the Legislature to authorize counties and towns to regulate or tax callings and pursuits, but the Legislature cannot tax them for the purpose of raising State revenue.

2. SAME: *On sewing machine companies.*
  The provision in section 4 of the revenue act of 1883, for taxing sewing machine companies and their agents, applies only to companies incorporated under the laws of this or some other State, and doing business in this State, and to the general agents of such companies; and a party cannot be convicted of the offense of selling without license under that act unless he sells as the general agent of such incorporated company, or as the agent of such agent.

APPEAL from *Carroll* Circuit Court.
Hon. J. M. PITTMAN, Circuit Judge.

*O. W. Watkins* for appellant.

Appellant was neither a *sewing machine company* nor a *general agent* of a sewing machine company, nor the *sub-agent* or *employe* of a general agent, and hence not liable to pay the license imposed by section 4, act of March 31, 1883, page 211.

The indictment simply charges that appellant was "engaged in the business of selling sewing machines as agent without license." But only two classes are prohibited, *i. e.* a general agent and his agents or employes. Appellant was neither, but only the salesman for a *general dealer* who *bought* his machines and sold them as other merchandise.

*W. F. Hill* also for appellant.

The only material difference between *section 2, article 7, Constitution 1836, and section 5, article 16, Constitution 1874,* is that the latter drops the word " merchant " and

Baker v. The State.

substitutes "ferries" and "exhibitions." Compare also *section 1, article 2, Constitution of 1836* with *section 2, article 2, Constitution 1874.*

Under the Constitution of 1836 acts were passed to tax the *privilege* of keeping a stallion, billiard tables, ten pin alleys, etc. (*Acts 1836, p. 188, sec. 3; sec. 5, p. 674, Rev. Stat. of 1838; sec. 14, p. 368 English's Digest.*) Compare these with *sec. 4, Acts of 1883; revenue act, p. 211,* and it will be plain that the tax is levied as upon a *privilege.* Now the Legislature has *no* right to pass a sweeping occupation tax for *State purposes.* But selling sewing machines is no more a *privilege* than selling plows, groceries, dry goods or anything else.

These various acts on the subject of taxing "privileges" for State purposes were held unconstitutional. *2 Ark , 291; 13 Ib., 752; 21 Ark., 50, 51 ; 5 Ark., 204, 412 ; 8 Ib., 222.*

There is no difference between the present and former statutes, and it only need be said *stare decisis.*

*Dan W. Jones,* Attorney General, for appellee.

This case involves the question of the constitutionality of *section 4, Acts 1883, p. 211, under article 16, section 5, Constitution 1874.*

If the tax can only be sustained upon the ground that the selling is a *privilege* then it must fail. (*2 Ark., 291, 309; 13 Ib., 752; 21 Ib., 40.*) But it is not necessary that such selling must be a *privilege,* in order to sustain the tax. See *Cooley on Taxation, pages 124, 125, citing 19 Barb., 81; 10 Oh., N. S., 159, 165 ; 4 N. Y., 419; 4 W. Va., 11.* See also *5 Allen, 426, 436 ; 57 Penn. St., 433, 437; 16 Mass., 213 ; 32 Mich., 406 ; 42 Texas, '636; 62 Penn. St., 491, 494; 12 Nevada, 263.*

These authorities show that the act is not unconstitutional.

Baker v. The State.

COCKRILL, C. J.    Section 4 of the revenue law of 1883, contains the following among other provisions, viz.:

"There shall be levied and collected as a State tax, upon each and every sewing machine company, or general agent for the sale of sewing machines, doing business in this State for the term of one year or less, the sum of two hundred dollars ; provided, that any sewing machine company or general sewing machine agent, who shall have paid said tax, may send his or their employes or sub-agents into any other county or counties than that in which his or their principal business may be carried on, upon payment of a county tax of five dollars for each employe or sub-agent in each of such additional counties wherein such employe or agent may be engaged in carrying on any part of his or their said business for the term of one year or less.

"Every person wishing to engage in * * business * * * as agent for the sale of sewing machines * * * * in this State, shall first pay for and take out a license for the privilege."

"Any person who shall engage in * * * business * * * as agent for the sale of sewing machines * * * without having paid the tax as provided in this act for said privilege, shall be guilty of a misdemeanor, and upon conviction shall be fined in double the amount of license he would be by the provisions of this act chargeable with." *Acts of 1883, p. 211.*

Appellant was indicted under this act for "unlawfully engaging in business as an agent for the sale of sewing machines" without a license.

Instruc-
tion ap-
proved.    On the trial he asked the court to instruct the jury that unless they found from the evidence that he sold machines as the general agent of a sewing machine company, or as the agent of a general agent for such a company, that he

Baker v. The State.

should be acquitted. This the court refused and appellant was convicted and appealed.

The construction of the provision of the Constitution relating to the taxation of privileges involved the decisions of this court in some confusion at an early day, and in *Washington v. State*, *13 Ark.*, *752*, in an attempt to extricate itself from this difficulty, the court held that there was no restraint upon the power of the Legislature to authorize counties and towns to regulate or tax callings and pursuits, but there was a restriction in that regard upon legislation for the purpose of raising a State revenue. This distinction has never been questioned by this court, but has been recognized and approved from time to time. *McGee v. Mathis*, *21 Ark.*, *40*; *Straub v. Gordon*, *27 Ib.*, *625*; *Barton v. City of Little Rock*, *33 Ib.*, *442*; *City of Little Rock v. Board*, *etc*, *42 Ib.*, *160*.

> 1. Taxes on privileges.

The framers of the present organic law, knowing the construction that had been put upon the provisions of the Constitution of 1836, bearing on this subject, adopted them without modification that can affect the question now presented here, and we must presume they intended to adopt with them the meaning the court had engrafted on them. This was recognized in *Barton v. City*, *sup.*, and we regard the question as closed against any other view we might be disposed to take of it.

All of the cases in this court before and since *Washington v. State*, *sup.*, concede that the Legislature can restrain or prohibit the use of any property or the exercise of any business or calling, if deemed to be against good policy or injurious to the public morals, but in the case last mentioned it was said that this restraint could not be exercised for the purpose of raising a State revenue by means of a license, because the act of licensing would admit that it was neither immoral nor injurious. The idea that the

State necessarily lends its countenance to everything that is licensed or taxed rests upon an apparent fallacy, for these are among the surest means of burdening recognized evils beyond existence, or by severe discipline, holding them within bounds, and the authority of the case in this respect has been disregarded by this court. We do not understand this case, reading it all together, to limit the power of legislation for State purposes to the taxation of such privileges as were technically known as such at the common law, notwithstanding an expression to that effect occurs in the opinion. We think the Legislature is not restrained by anything in the organic law from laying a tax on the.franchise of a corporation, and the reasoning of the learned judge who delivered the opinion in Washington's case, *sup.*, leads to that conclusion. (See *Burrows' Taxation, sec. 55.*) The corporation owes its existence to the State, and the right to enjoy this privilege is the subject of taxation. *Burrows' Taxation, p. 166, sec. 85; Railroad Taxation, 92 U. S., 575; Danville Banking Co. v. Parks, 88 Ib., 170; City of New Orleans v. Salamander Ins. Co., 25 La. An., 650.*

In the case of a foreign corporation the tax or license is paid for the privilege of exercising its corporate powers in the State. *Burrows' Taxation, sec. 79; Ducat v. Chicago, 10 Wall., 410; Liverpool Ins. Co. v. Mass, Ib., 566; Doyle v. Continental Ins. Co., 94 U. S., 535.*

2. TAXES: On sewing machine companies.    The section of the act in question levies a State tax on sewing machine *companies.* The word company includes corporation in its meaning, but it means more than that. When this section is read, however, in connection with section 42 of the same act, where all companies are spoken of as incorporated, it may fairly be said to mean companies enjoying a corporate franchise under the laws of this or some other State. The words "general agent," in the

same connection, must be construed with reference to an incorporated sewing machine company. We are strengthened in this conclusion by the fact that under the decision *supra*, construing the right to tax a privilege, the Legislature could not lay a tax on the business of individuals associated as partners merely, because this is a common right in no way dependent on the legislative will for its existence, and we may presume that it was the legislative intent to do only what it may lawfully effect unless a contrary intention clearly appears.

The result is that the Legislature has imposed a State tax, as it had the authority to do, on every incorporated sewing machine company doing business in this State, or upon any general agent who acts for such a company, and it has also provided for a tax to be paid each county in which its sub-agents may do business. We have nothing to do with the wisdom or policy of the act. That is with the Legislature.

The court should have instructed the jury as the appellant asked, and the judgment must be reversed and the cause remanded for a new trial.