FLOYD v. MILLER LUMBER COMPANY.

Opinion delivered June 25, 1923.

1. LICENSES—TAX ON BUSINESS OF SEVERING TIMBER.—The tax levied by Acts 1923, No. 118, on those engaged in the business of severing timber from the soil is a privilege tax on the occupation, and not a property tax, and is authorized by Const., art. 16, § 5, empowering the General Assembly to tax privileges.

2. LICENSES—VALIDITY OF SEVERANCE TAX.—The tax levied by Acts 1923, No. 118, on the privilege of engaging in the business of severing timber from the soil, is valid as applied to individuals as well as to corporations engaged in that business.

3. CONSTITUTIONAL LAW—SEVERANCE TAX—DUE PROCESS.—Acts 1923, No. 118, levying a privilege tax on those engaged in the business of severing timber from the soil, does not deny due process to the persons taxed, contrary to the Constitution of the United States.

Appeal from Pulaski Chancery Court; *John E. Martineau*, Chancellor; reversed.

*J. S. Utley,* Attorney General, *Jno. L. Carter, Wm. T. Hammock,* Assistants, *Gordon & Combs,* for appellant.

Act 118 of the Acts of 1923 does not contravene the Constitution, either State or Federal. Act 681 of Acts of 1923, amending § 5 of said act 118, does not bring it into conflict with the Constitution, State or Federal. Rule for construction of. 120 Ark. 288; 91 Ark. 5; 140 Ark. 398; 150 Ark. 486; 155 U. S. 657. The act of 681 should be construed as taking the place of § 5 of act 118 rather than extending the provisions thereof, which would bring it into conflict with § 23, art. 5, Constitution of Arkansas. 29 Ark. 252; 31 Ark. 239; 61 Ark. 625; 120 Ark. 169; 89 Ark. 598; 99 Ark. 100; 132 Ark. 609; 133 Ark. 157; 141 Ark. 84; 141 Ark. 518; 141 Ark. 196; 141 Ark. 612. Act 681 can take the place of § 5, act 118, but as an addition thereto would be unconstitutional. 132 Ark. 128; 154 Ark. 218; 143 Ark. 83; 138 Ark. 459. Act No. 118 provides a privilege and not a property tax, and is a valid enactment. Section 5, art. 16, Constitution 1874. 1 Ark. 513; 4 Ark. 473; 99 Ark. 1; 49 Ark. 100; 112 Ark. 342; Cooley's Const. Lim., 587; 100 U. S. 491; Cooley on Taxation, 2d ed. 5; 176 U. S. 119; 94 U. S. 179; 211 U. S. 539; 81 Ark. 304; 169 U. S. 366; 128 U. S. 1; 43 Ark. 527; 93 Ark. 612. The tax is laid upon the privilege for severance of natural wealth for "commercial purposes" and is expressly authorized by the Constitution. 70 Ark. 549; 141 Ark. 521; 140 Ark. 320; 93 Ark. 612; 100 Ark. 175; 102 Ark. 131; 106 Ark. 321; 235 U. S. 265; 27 Ark. 265; 153 Ark. 114. Act not discriminatory in levying a greater tax on some lines of production than others since it is but a proper classification of business, the burden resting equally upon all of the same class. 70 Ark. 549; 141 Ark. 521; 102 Ark. 131; 85 Ark. 470; 217 U. S. 79; 217 U. S. 114. As authorizing a privilege tax, act is not obnoxious to equality and uniformity clause of Constitution. Act does not violate due process of law clause of Federal Constitution. Section 1, 14th Amendment to Federal Constitution; § 8,

art. 2, State Constitution; 204 U. S. 241, affirming 74
Ark. 174; 95 U. S. 714; 110 U. S. 516; 134 U. S. 232;
113 U. S. 703; 101 U. S. 22; 160 U. S. 452; 115 U. S. 321;
94 U. S. 123; 214 U. S. 114.  Act 681 should be held to
take the place of § 5, Act 118; and the three acts, Nos.
118, 681 and 775, however construed to affect each other,
lay a privilege tax, under reasonable and proper classi-
fication, without violating the State or Federal Consti-
tution, as alleged.

*W. R. Satterfield, Allen Hughes, Daggett & Daggett,
Coleman, Robinson & House,* for appellees.

This appeal involves the constitutionality of act
118, Acts 1923, known as the severance tax law, so far
as its application to timber is concerned.  The act is
obnoxious to § 5, art. 16, Constitution of Arkansas.
Standing timber has always been regarded by law as a
part of the realty.  When conveyed separate from the
land, it is required to be separately assessed.  C. & M. Di-
gest, § 9940.  The right of severance is a property right
inseparably connected with the title itself, and without
which the title would be an empty form.  99 Ark. 112; 84
Ark. 603; 91 Ark. 292; 109 Ark. 223; 143 Ark. 97.  The
right of severance is an incident of ownership and an
attribute of title, and a tax thereon is a tax on the own-
ership of the timber itself.  72 So. 891; 26 R. C. L. 36.
The revenue provision of the Constitution of 1836, Reve-
nue, § 2, so far as the present question is concerned, was
identical with § 5, art. 16, Constitution 1874, and con-
strued in 2 Ark. 291; 1 Blackstone 272, Privileges; 2
Ark. 309.  Clear distinction drawn between taxing power
of State and its police power.  13 Ark. 752; 33 Ark. 436;
44 Ark. 138.  Obviously, under Constitution of 1836 the
court held that whatever was a matter of common right
was not a privilege, and could not be taxed as a privi-
lege.  Under present Constitution the construction of
similar provisions in Constitution of 1836 necessarily
adopted with it.  Occupation tax held unconstitutional.
58 Ark. 609; 70 Ark. 549; 85 Ark. 509; 93 Ark. 612.

The right to cut one's own timber from one's own land is a property right and not merely a privilege. The tax levied on persons engaged in the business of severing timber from the soil for commercial purposes is a tax on such persons' occupation or business, which cannot be taxed under the Constitution for State revenue. 119 Ark. 314; 153 Ark. 114; 70 Ark. 549; 44 Ark. 137; 73 Ark. 276; 157 U. S. 429; 72 So. 891; 12 Wheat. 444; 112 Miss. 383; 73 So. 193; 255 U. S. 228. The act is, without doubt, a revenue measure and a tax on the right to sever timber, is a tax on the value of the timber, which is a tax on the timber itself. Should the court hold the right of severance to be a taxable privilege, then the act would be void as violative of the Fourteenth Amendment to the Federal Constitution. 245 U. S. 60; 217 U. S. 114.

*Pryor & Miles,* amici curiae.

*J. S. Utley,* Attorney General, *John L. Carter, Wm. T. Hammock,* Assistants, and *Gordon & Combs,* in reply.

Severance tax sustained in 88 So. (Ala.) 65; 153 N. W. 14; 152 N. W. 1088, 247 U. S. 350; U. S. Adv. Op. May 7, 1923; 141 Ark. 521; 70 Ark. 549; 217 U. S. 121.

HUMPHREYS, J. This suit was instituted in the chancery court of Pulaski County, and is an attack by individuals and corporations upon the constitutionality of act No. 118 of the Acts of the General Assembly of 1923, known as the severance tax law, in its application to timber.

The first section of the act levied an annual privilege tax upon each person, firm, corporation, or association engaged in the business, among other things, of severing timber from the soil, for commercial purposes. The fourth section of the act fixed a general rate of the tax at two and one-half per cent. of the gross cash market value of the severed product, except on certain natural resources specially provided for in section five of the act. The fifth section of the act fixed a special rate at twenty-five cents a ton on bauxite, one cent a ton on coal,

and seven cents a thousand on timber. The fifth section of the act was amended at the same session of the Legislature by act No. 681 so as to impose a privilege tax of ten cents per ton on every shipper of manganese. The title of said act No. 118 is as follows:

"An act to levy a privilege or license tax upon all persons, firms, corporations, or associations, or persons engaged in the business of severing natural resources from the soil or water, and requiring all those so engaged to make such reports of their business as may be necessary for the proper enforcement of this act."

The following abbreviated statement of the facts alleged in the bill appears in appellee's brief:

"Each of the plaintiffs is engaged in the business of the manufacture and sale of lumber and other timber products, in the conduct of which they sever their timber from the soil on which it is growing, the severance being merely an incidental step in the process of manufacture. Some of the plaintiffs own the land and timber, while others own the timber alone, the title to the land being in some one else.

"At the present time, and at all times heretofore, the land and the timber thereon, or the timber alone where the ownership of the timber is different from the ownership of the land, is and has been treated by the taxing authorities of the State as real property, and is and has been assessed in the same manner and on the same basis as all other real property in the State. Plaintiffs have regularly paid all State and county taxes levied on such land and timber, or on the timber alone, as the case may have been, together with all other public impositions laid on such property under the laws of the State.

"None of the plaintiffs are engaged in the business of severing timber from the soil, but all are engaged in the business of manufacturing timber into lumber and other finished products, and the severance of timber is

an incidental step in the conduct of their general manufacturing business.

"Notwithstanding the fact that the value of timber in this State ranges from $2 a thousand feet to $50 a thousand feet, at the place of severance, the act imposes an arbitrary tax of seven cents a thousand feet on each and every class of timber, without any reference to its value.

"Some of the timber owned by the plaintiffs is standing on island in navigable streams, and on lands bordering thereon, but which are outside of levees constructed along the streams, the soil of which has no use or value except to support or sustain the growth of timber thereon, as the land is not susceptible of cultivation, or capable of any other use. The sole income from such land is, and if necessary must be, derived from the timber growing thereon, and this income cannot be realized without a severance of the timber." Appellant filed a demurrer to the bill, which was overruled by the court, and, failing to plead further, decree was rendered declaring said acts, original and amendatory, unconstitutional and void, from which is this appeal. In annulling the acts the trial court ruled that act No. 681 did not repeal and supplant section 5 of act No. 118, and appellant contends that the ruling of the court in this respect was erroneous. We do not understand that appellees have made or are making any contention in this case against the amount of the tax sought to be enforced against them, but are claiming that no amount should be collected from them because of the unconstitutionality of the acts. Appellees have refrained from arguing, in their brief, the effect of act No. 681 upon section 5 of act 118, because, under their view of the case, the effect thereof is not within the issue. We agree with appellees that, after the trial court declared the acts unconstitutional, it was not within the issue to determine the effect of the amendatory act upon § 5 of the original act. Appellees are the attacking parties, and we pre-

termit a discussion of any issues not presented by them. *Amici curiae* have filed a brief presenting views as to the effect of the amendatory act upon § 5 of the original act, but, not being within the issue, we refrain from expressing an opinion thereon.

The constitutionality of the acts is first assailed upon the ground that they impose a property tax on timber because, it is argued, that any attempt to impose a tax on the only available use of a thing is, in effect, a tax upon the thing itself, and therefore a property tax. This test, invoked by learned counsel for appellees, was repudiated in the case of *Fort Smith* v. *Scruggs,* 70 Ark. 549; so said this court in the case of *Standard Oil Company of Louisiana* v. *Brodie,* 153 Ark. 114. In the last case cited this court took occasion to say that: "We are unwilling to subscribe unqualifiedly to the doctrine that a tax on the only available use of an article is, in every instance, a tax on the article itself." Appellees assert that the statutes in question lay a tax upon the right to sever timber from the soil, which is the only available use that can be made of standing timber. The statutes do not lay a tax upon the mere act of severance, but upon the "business of severing timber from the soil for commercial purposes." Those who sever their timber for other purposes are specifically exempt from the privilege tax imposed by the acts. This court has ruled that a tax laid upon residents of a city for the privilege of keeping and using wheeled vehicles is not a property tax and void because a double taxation, but is a privilege tax for using the public streets of the city. *Fort Smith* v. *Scruggs, supra.* And has likewise ruled, in *Standard Oil Co. of La.* v. *Brodie, supra* (quoting syllabus 4): "Acts 1921, p. 685, providing that persons, firms or corporations who sell gasoline, kerosene or other products to be used in propelling motor vehicles using combustible type engines over the highways of this State shall collect from such purchaser one cent for each gallon so sold, imposes a tax upon the

use of public highways, and is not invalid as imposing a tax on property in violation of the uniformity clause of the State Constitution, though the Legislature, by Acts 1921, p. 490, had previously imposed a privilege tax on automobiles according to their capacity.''

The Supreme Court of the United States had occasion quite recently to determine whether a Minnesota statute laying a tax upon the occupation of mining coal was a property tax and void, or an occupation tax and valid. The court, through Mr. Justice VAN DEVANTER, said:

''The parties differ about the nature of the tax, the plaintiffs insisting it is a property tax and the defendants that it is an occupation tax. Both treat the question as affecting the solution of other contentions. We think the tax in its essence is what the act calls it, an occupation tax. It is not laid on the land containing the ore nor on the ore after removal, but on the business of mining the ore, which consists in severing it from its natural bed and bringing it to the surface, where it can become an article of commerce, and be utilized in the industrial arts. Mining is a well recognized business wherein capital and labor are extensively employed. This is particularly true in Minnesota. Obviously a tax laid on those who are engaged in that business, and laid on them solely because they are so engaged, as is the case here, is an occupation tax. It does not differ materially from a tax on those who engage in manufacturing.'' *Oliver Iron Milling Co.* v. *Lord,* 262 U. S. 172.

Following the lead of the Supreme Court and the trend of our own decisions, and for purposes of uniformity, a thing to be desired, a majority of the court, including the writer, have concluded that the tax imposed by the acts is a privilege and not a property tax. As a privilege tax, it is clearly and definitely authorized by the Constitution. ''The General Assembly shall have power, from time to time, to tax hawkers, peddlers, ferries, exhibitions, and privileges in such manner as may

be proper." Const. 1874. art. 16, § 5. The extent of
the taxing power vested by this section of the Constitu-
tion in the Legislature of the State was the subject of
review in the case of *Fort Smith* v. *Scruggs, supra.*
Bearing upon the point the following excerpts from the
works of Judge Cooley were quoted approvingly by Mr.
Justice RIDDICK:

"Everything to which the legislative power extends
may be the subject of taxation, whether it be person or
property, or possession, franchise, or privilege, or oc-
cupation, or right. Nothing but express constitutional
limitation upon legislative authority can exclude any-
thing to which the authority extends from the grasp of
the taxing power, if the Legislature, in its discretion,
shall at any time select it for revenue purposes." Cool-
ey, Tax. (2d ed.) p. 5. "The power to impose taxes
is one so unlimited in force and so searching in extent
that the courts scarcely venture to declare that it is sub-
ject to any restrictions whatever, except such as rest in
the discretion of the authority which exercises it. It
reaches to every trade or occupation; to every object of
industry, use or enjoyment; to every species of posses-
sion; and it imposes a burden which, in case of failure
to discharge it, may be followed by seizure and sale or
confiscation of property." Cooley, Const. Lim. (6th
ed.) 587. The court then said:

"The subject-matter of this statute comes, we think,
within the general lawmaking power of the Legislature,
and, if there be any limitation forbidding the exercise
of such power in that respect, it must be found in the
Constitution. But there is none. Our Constitution
specially provides that the Legislature shall have power
to tax privileges in such manner as may be deemed
proper. It also authorizes the Legislature to delegate
the taxing power to towns and cities of the State to the
extent necessary for 'their existence, maintenance and
wellbeing.' Const. 1874, art. 2, § 23; also art 16,
§ 5. And it has been established by the decisions of

the court that the Legislature may delegate to towns and cities the power to tax occupations. *Little Rock* v. *Prather,* 46 Ark. 479." Power to tax occupations for purposes of revenue exists in the Legislature, under the Constitution, else it could not confer same on towns and cities. To hold otherwise would produce an anomalous situation. In reaching the conclusion that the acts impose a privilege tax upon the business of severing timber from the soil for commercial purposes, and that the taxes imposed are not a property tax, Mr. Justice HART disqualified himself on account of certain of his relatives being largely interested in a lumber corporation, engaged in the business of severing timber from the soil for commercial purposes, and did not participate in that branch of the case. Mr. Justice WOOD held to the view that the acts impose a property tax upon the timber, and are void. Both, however, assuming that the statute imposes a privilege and not a property tax, agree with the writer that the acts apply with the same force and effect to individuals as to corporations. The Constitution confers authority upon the Legislature to impose reasonable privilege taxes for the purposes of revenue upon all persons. No distinction is made between corporations and individuals in the clause of the Constitution conferring such power. Under Judge Cooley's broad declaration of who may be required to pay privilege taxes, approved by this court, there is no escape for individuals, firms, or associations from the effect of the acts embracing them. The question of whether those engaged in the removal of our natural resources for commercial purposes shall be required to contribute to the support of the government is one of legislative policy. Power to compel them to do so was conferred upon the Legislature by the Constitution.

The validity of the acts is also assailed upon the ground that they violate the due process clauses of the State and Federal constitutions. We are unable to see wherein they infringe upon these clauses. They are

taxation statutes authorized by the State Constitution, and are themselves due process of law.

For the error indicated, the decree is reversed and the cause remanded, with directions to proceed in a manner not inconsistent with this opinion.

The Chief Justice and Justice SMITH uphold the tax as to corporations, but hold that it is void as to individuals.

### CONCURRING OPINION.

McCULLOCH, C. J. I agree to so much of the opinion handed down by Mr. Justice HUMPHREYS as holds that the tax imposition of the statute under consideration is not a property tax, and that the statute is valid as far as it applies to corporations which come within its operation. But I do not think that such a tax can be imposed on individuals as a State tax.

It is not a property tax because it is imposed, not on the taking or use of timber, but on the severance for "commercial purposes." It is a tax on a business—an occupation tax.

The Constitution (art. XVI, § 5) restricts the power of the State to levy taxes generally on privileges. *Washington* v. *State,* 13 Ark. 752; *Baker* v. *State,* 44 Ark. 134; *State* v. *Washmood,* 58 Ark. 609; *Standard Oil Co.* v. *Brodie,* 153 Ark. 114. There was certain language in the Washington case which appeared to decide that a similar provision in the Constitution of 1836 limited this power of imposing a privilege tax for State revenue to "such privileges as were technically known as such at common law," but in the Baker case, *supra,* this language was explained. In the Baker case it was distinctly held that the State could not impose an occupation tax on individuals. In that case there was involved a State tax on the sale of sewing machines, and Chief Justice COCKRILL, speaking for the court, said:

"The construction of the provision of the Constitution relating to the taxation of privileges involved the decisions of this court in some confusion at an early

day, and in *Washington* v. *State*, 13 Ark. 752, in an attempt to extricate itself from this difficulty, the court held that there was no restraint upon the power of the Legislature to authorize counties and towns to regulate or tax callings and pursuits, but there was a restriction in that regard upon legislation for the purpose of raising a State revenue. This distinction has never been questioned by this court, but has been recognized and approved from time to time. * * * The framers of the present organic law, knowing the construction that had been put upon the provisions of the Constitution of 1836, bearing on this subject, adopted them without modification that can affect the question now presented here, and we must presume they intended to adopt them with the meaning the court had ingrafted on them. This was recognized in *Barton* v. *City, supra,* and we regard the question as closed against any other view we might be disposed to take of it. * * * We do not understand this case, reading it all together, to limit the power of the legislation for State purposes to the taxation of such privileges as were technically known as such at common law, notwithstanding an expression to that effect occurs in the opinion. We think the Legislature is not restrained by anything in the organic law from laying a tax on the franchise of a corporation, and the reasoning of the learned judge who delivered the opinion in Washington's case, *supra*, leads to that conclusion. (See Burroughs' Taxation, § 55). The corporation owes its existence to the State, and the right to emjoy this privilege is the subject of taxation."

It will be seen from this declaration of the law that the court held that the tax could be imposed on a corporation as a tax on its franchise, but that it could not be imposed on individuals as a State tax on occupations.

In *State* v. *Washmood, supra,* there was involved a statute imposing a State tax on "every traveling agent" for any life insurance company or other company doing certain kinds of insurance business, and it was decided

that the statute was unconstitutional. The court, in disposing of the question, said: "If, however, the intention of the Legislature in enacting said § 5591 was to impose a tax upon the agent therein named, the tax would be an occupation tax, and, being a State tax as expressed, it would be in violation of the Constitution of the State, as has been settled by numerous decisions of this court."

In *Standard Oil Co.* v. *Brodie, supra* (the gasoline case), we upheld the tax, not as an occupation tax, but as a tax on the privilege of using the public highways. In that case we said: "While the public highways are for the common use of all, they belong to the public, and it is within the power of the Legislature either to regulate or to tax the privilege of using them."

The effect of these decisions undoubtedly is that the State cannot tax occupations generally, but must find its power to tax outside of this restriction. The power was found in the Baker case and in the gasoline case in the right to tax the franchise of corporations as a privilege tax and to tax the use of public highways. Whether or not other exceptions outside of the constitutional restriction can be found remains to be seen in the future.

I am unable to discover any ground for taking the operation of this statute, as applied to individuals, out of the restrictions prescribed in the Constitution.

The opinion of Judge RIDDICK in *Fort Smith* v. *Scruggs,* 70 Ark. 549, affords no support to the view that the Legislature can impose, for State revenue purposes, a tax on occupations. That was a case where the tax was imposed by a municipality, and it is undisputed that the State may delegate to counties and municipalities the power to levy any tax not prohibited by the Constitution. *Baker* v. *State, supra.*

The business of severing timber or minerals from the soil for commercial purposes is purely an occupation, and the State cannot tax it as against individuals. Timber and minerals attached to the soil are individual property, as much so as anything else, and the business of

severing for commercial purposes is a lawful business, of the pursuit of which no individual can be deprived. Therefore it falls within the restriction found in the Constitution. *Penn. Coal Co. v. Mahon,* 260 U. S. 393.

It is unnecessary to say anything further concerning the power of the State to tax corporations in this manner, for the cases cited above decided that the tax on the business of a corporation is in effect a tax on the franchise, and that it is valid. Nor is it worth while to notice the distinction, if any, between the taxing of a corporate franchise and an attempt to tax, as a privilege, the exercise of power under a franchise. It is all a tax on the franchise. Judge COCKRILL, in expressing the conclusions of the court in the Baker case, *supra,* made no distinction, but spoke of the franchise of a corporation and the exercise of power under the franchise as being fit subjects of taxation under our Constitution. See also *State* v. *New York Life Ins. Co.,* 119 Ark. 314. The fact that a corporate franchise has already been granted does not affect the power of the State to impose the severance tax as an additional tax on the franchise, for the continuing power of the State over corporate franchises cannot be surrendered or bartered away. On the contrary, the continuing power of the State over corporations is expressly reserved in the Constitution, art. XII, § 16.

The different provisions of the statute are separable, and the tax against corporations can be upheld, though it is found to be void against individuals. *Railway Co.* v. *Leep,* 58 Ark. 407. The statute itself (§ 16) provides that if any part be found to be invalid, the remainder shall be enforced.

Notwithstanding my views on this subject, on account of the peculiar situation which has arisen in the present case by reason of the conflicting views of the judges and the fact that one of the judges is disqualified in one branch of the case, I am voting to reverse the decree as to individuals as well as to corporations. Three of the

other judges are of the opinion that the statute is valid
as against individuals, if valid against corporations, and,
as it will be enforced against both, I feel justified in vot-
ing to reverse this decree so that the individual litigants
in the present case may be placed under the same lia-
bility as other individuals engaged in the business to be
taxed.

I am authorized by Mr. Justice SMITH to say that
his attitude in the case is the same as my own, and that
he agrees with me in all that I have here written.

HART, J., (separate opinion). It is important to the
correct and uniform administration of our severance tax
statute that the views of the court should be thoroughly
understood. On this account, as well as on account of
the divergent views of the judges, it is appropriate that
my views be definitely stated.

Under the Constitution of 1836 the Legislature had
power to tax merchants, hawkers, peddlers, and privi-
leges in such manner as might, from time to time, be
prescribed by law.

In construing the provisions, this court held that the
Legislature could not tax, as a privilege, the exercise of
a common right, which, the very act of licensing admits,
is neither immoral nor injurious to the rights of others.
*Washington* v. *State,* 13 Ark. 752.

Our present Constitution provides that the General
Assembly shall have power, from time to time, to tax
hawkers, peddlers, ferries, exhibitions, and privileges
in such manner as may be deemed proper. Constitution
of 1874, art. 16, § 5.

In *Baker* v. *State,* 44 Ark. 134, the court expressly
applied the doctrine of adoptive construction, and held
that the provision of the Constitution limited the power
of legislation for said purposes to the taxation of such
privileges as were recognized as such at the common
law. The court held, further, that the taxation of a cor-
porate franchise was such a privilege.

Again, in the recent case of *Standard Oil Co. of La. v. Brodie,* 153 Ark. 144, it was recognized that this constitutional provision is a restriction upon the power of taxation óf privileges, and that it does not authorize the taxation upon a privilege which was the common right of every citizen.

We must presume that the Legislature had in mind the principles announced in these decisions when it passed the severance tax act at its last session. General Acts of 1923, p. 67. The act levies a privilege or license tax, to be known as the severance tax, upon each person, firm, corporation, or association of persons engaged in the business of mining, cutting, or otherwise severing from the soil or water, for commercial purposes, certain enumerated natural resources.

Under the terms of the act the plaintiffs combined in one suit separate actions against the Arkansas Railroad Commission for the purpose of enjoining the collection of the taxes imposed by the act. The suits were, in effect, separate and distinct actions, and separate decrees were sought in each case. Therefore the writer considered himself disqualified in the cases against the corporations because some of his relatives within the prohibited degree owned nearly all of the stock of a corporation running a sawmill for commercial purposes. He did not consider himself disqualified, however, in the cases involving the collection of the taxes from individuals and partnerships.

Therefore the other members of the court first took up the question of whether or not the act was a valid one in so far as corporations are concerned. After a majority of the court, for different reasons, had reached the conclusion that the law was valid as to corporations, the writer participated in the cases filed against individuals and partnerships, and held to the opinion that if the law should be deemed valid as to corporations, it should also be held valid as to individuals and partnerships.

The opinion of the court was then prepared and delivered by Judge HUMPHREYS. Subsequently a concurring opinion was prepared by Chief Justice McCULLOCH and agreed to by Justice SMITH, and handed down by them.

In preparing his opinion Judge HUMPHREYS proceeded upon the theory that the case of *Fort Smith* v. *Scruggs,* 70 Ark. 549, overrules our earlier decisions on the question to the effect that the Legislature cannot tax, for State revenue, any privileges except those which are ascertained and recognized to be such at common law, and carried us to the Tennessee doctrine, which is that a privilege is whatever the Legislature declares to be a privilege and taxes as such. *Burke* v. *Memphis,* 94 Tenn. 692, and cases cited.

On the other hand, Chief Justice McCULLOCH and Justice SMITH proceeded upon the theory that the statute in question is a franchise tax, and announced their views and reasons therefor in a separate opinion. They rely upon the doctrine announced in the case of *Baker* v. *State, supra,* but it seems to me that, in doing so, they have placed a construction upon that decision which its language does not warrant and which is directly in conflict with the construction placed upon it in the case of *St. Louis S. W. Ry. Co.* v. *State,* 106 Ark. 321.

In the latter case the court had under consideration an act of the Legislature of 1911, entitled, "An act for an annual franchise tax on corporations doing business in the State of Arkansas." The act in question imposed a tax on the corporations for exercising corporate franchises, and the court held, in the application of the doctrine laid down in the case of *Baker* v. *State, supra,* that the tax imposed by the act by its very language possessed the legal quality of a franchise tax.

In discussing the statute the court said: "In the passage of the act in question, no doubt the Legislature had in mind the fact that the right or privilege to be or exist as a corporation, although a matter of value to the

stockholders of the corporation, is not an asset of the corporation and transferable as such, and that its value cannot, under ordinary rules, be ascertained for the purpose of taxation as property, but, since it is a privilege or right granted by the State, a franchise tax may be imposed upon this right or privilege for the purpose of raising revenue. We think it plain, then, under our Constitution and decisions, that the act in question is valid, unless it be held a burden upon interstate commerce.''

While it is competent for the Legislature to declare under what conditions corporations may do business in the State, the statute under consideration was not an act for that purpose, and in my judgment to make it such would be judicial legislation.

It seems to me that, in construing it to be a franchise tax, Chief Justice McCULLOCH and Judge SMITH have disregarded the plain language and evident intent of the act and have proceeded upon the theory that there is no difference whatever between an occupation tax and a franchise tax. Of course, if the language of the act was not intended to make the tax levied a franchise tax, then the doctrine with relation to the partial invalidity of statutes can have no application whatever.

Because a majority of the court, for different reasons, voted that the act was valid in so far as corporations were concerned, when we came to the consideration of the cases against individuals and partnerships, in order to secure some degree of uniformity, the writer voted that the statute also applied to individuals and partnerships, and in reaching this conclusion intended to modify what he then considered the common-law rule. In other words, he was of the opinion at that time that the exercise of the occupations enumerated in the statute was one of common right, and that in no sense did the Legislature intend to impose the tax as a franchise tax upon corporations.

To my mind it is quite plain, from the language used in the act, that the Legislature intended to tax the occupation or business of severing from the soil or water, for commercial purposes, the natural resources of the State enumerated in the act, by any person or corporation or association of persons engaged in such pursuit or business. Upon further consideration of the case, upon rehearing, I have reached the conclusion that the occupations taxed in the act may be termed privileges under the common law and taxed as such under our Constitution. There has been no precise limit to the police power of the State, as construed by this court. A good definition was given by Judge SMITH in *Dabbs* v. *Smith,* 39 Ark. 353. We quote from his opinion the following: "It is difficult to assign bounds to the police power of the State. It extends to the protection of the lives, health, comfort and quiet of all persons and the protection of all property within the State. *Thorpe* v. *R. & B. R. Co.,* 27 Vt. 140."

The opinion in the Vermont case was written by Chief Justice REDFIELD, one of the great judges of the United States. The same definition was also declared by the Supreme Court of the United States in *Barbier* v. *Connolly,* 113 U. S. 27. The opinion was prepared by Judge FIELD, who was noted for his learning and clearness of expression. In discussing the Fourteenth Amendment he used this language: "But neither the amendment, broad and comprehensive as it is, nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the State, develop its resources, and add to its wealth and prosperity."

In the application of these definitions, this court held, in *Pine Bluff Trans. Co.* v. *Nichol,* 140 Ark. 320, that the movement of motor vehicles over highways,

being attended by constant dangers to the public and being abnormally destructive of the highways, was a proper subject of police regulation by the State, and therefore taxable by the Legislature as a privilege, under the clause of the Constitution under consideration in this case.

The holding was in recognition of the principle that the police power of the State is not a fixed and rigid thing, and that changed conditions require different regulations. It seems to me that the business of mining may be classed as a privilege under the common law. It has always been recognized as an occupation calling for regulation under the police power of the State. The effect of sinking shafts, tunneling, blasting and hoisting ores, whether done by a corporation, an individual, or an association of individuals, consists in changing part of the realty into personalty and putting it into a marketable form. It has been said that the very process of mining is equivalent in its results to a manufacturing process. *Stratton's Independence, Limited,* v. *Howbert,* 231 U. S. 399, and *Oliver Iron Mining Co.* v. *Lord,* 262 U. S. 172.

Judge Cooley classes taxes upon manufacturing companies as excise taxes. Cooley on Taxation, 3d ed., vol. 2, p. 1115.

The case with regard to operating a sawmill for commercial purposes is not so clear, but I have also reached the conclusion that it might be classed as a privilege at common law. There comes a time in the history of every country when the conservation of its natural resources, including the protection of its forests, becomes a matter of first importance to the welfare of the people, and, as such, is necessary to the protection of all the property within the State.

It is a rule of universal application that, while principles of law do not change, changed conditions necessitate different regulations, the object being the same in each instance, and that is to promote the welfare of the people and to protect their health and property. The

business of severing trees from the soil and converting them into lumber has been held to be a manufacturing enterprise. *State* v. *Chadbourn*, 80 N. C. 479.

The result of my views is that the statute does not provide for a franchise tax upon corporations, but imposes a tax upon all those engaged in the business of severing natural resources from the soil for commercial purposes, whether corporations, individuals, associations of individuals, or partnerships; and that these occupations come within the class that at the common law may be regulated under the police power of the State and taxed as privileges under our Constitution. Therefore I have voted to overrule the motion to rehear.

WOOD, J., (dissenting). The act under review levies what is denominated in the act as "a privilege or license tax," and called the severance tax, upon each person, firm, corporation, or association of persons, called the "producer," who engages in the business of severing from the soil or water, for commercial purposes, the various natural products enumerated in the act. If the tax be an occupation tax or privilege tax, and if it applies to corporations, then unquestionably it also applies to individuals. The act is too long to set forth and analyze at length, but a careful reading of the whole, including its title and the emergency clause, convinces me that the Legislature would not have enacted this severance tax law if it had conceived for one moment that the act would be construed as valid when applied to corporations but unconstitutional and void when applied to individuals and the other classes mentioned therein. The act lays the tax upon the producer who severs the natural resources of the soil and water, and then the Legislature, after specifically naming every resource it could conceive, included any that might have been overlooked in the all-embracing words, "and all other natural products of the soil or water of Arkansas."

The act on its face, if valid, is fair, but, if it could be construed to intend to include only corporations, it

would be so shockingly unjust and discriminatory that no court of last resort would hesitate to declare it unconstitutional and void. To illustrate, if a corporation owned a thousand acres of coal, bauxite, zinc, or other mineral lands, gas and oil or timber lands, from which these natural products were being severed by the corporation for commercial purposes, and an individual or partnership, company, or an association of persons, not a corporation, owned a thousand acres of similar lands adjoining from which these natural resources were being taken or severed in precisely similar manner as that employed by the corporation, would any court tolerate a classification which imposed the severance tax levied by this law on the corporation and at the same time exempted the noncorporate owners from the same tax burden? Corporations, after all, are but an aggregation of individuals doing business by authority of the sovereign as a corporate entity. The right to do business in this form and to possess and enjoy all the rights incident thereto are as sacred under our Constitution and statutes as are the rights of individuals and other classes named in the act who do not conduct the same business as a corporation. I am unwilling to impeach our lawmaking body or any member thereof of the monstrous injustice and unfairness that would be involved in the proposition of declaring that they intended to pass a law of this kind, which might, by any possibility, be held constitutional and valid as applied to corporations, but unconstitutional and void as applied to individuals and other classes of producers named therein. I am aware that the Legislature has a wide discretion in the matter of classification. Conceding, for the sake of the argument only, that it was within the power of the Legislature to lay this severance tax as a privilege tax upon the franchise of corporations, authorizing them to engage in the business of severing the various natural products enumerated in the act, still I cannot believe that even the most inveterate revenue sleuth in any General Assembly, in his persistent search

for taxes and still more taxes, would have pounced upon corporations and passed by individuals if he had anticipated that it would be construed as applying to corporations but not to individuals. The General Assembly, I am sure, had no such thought when it enacted this law. The act as a whole shows clearly that the General Assembly was seeking more revenue producers, under a system which, it believed, would place the burden impartially upon all classes that were in the same or similar situations. I feel certain that it was not the intention of the Legislature to pass over one class, and thus exempt it from the burden, while laying it upon another class who were producers under the same conditions.

The law, as announced by Judge Cooley and followed in innumerable cases of our own and other courts, is to the effect that, if the provisions of a statute "are so mutually connected with and dependent on each other as conditions, considerations or compensations for each other, as to warrant the belief that the Legislature would not pass the residue independently, then, if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them." *Oliver* v. *Southern Trust Company,* 138 Ark. 381-387. While the act contains the usual sweeping provision to the effect that "if any section, subsection, sentence, clause, or phrase be held unconstitutional, such decision shall not affect the validity of the remaining portions of the act," yet I am persuaded that such a clause should only be construed as expressing a desire upon the part of the Legislature to pass an act that was not unconstitutional and to so phrase it that it could not be declared unconstitutional. We virtually so held in the recent case of *Nixon* v. *Allen,* 150 Ark. 253. Certainly it was not intended by such a clause to justify the elimination, by judicial construction, of any provision in the act which was a "condition, consideration or compensation" for some other provision, and which pro-

visions, taken all together, are essential to effectuate the intention of the Legislature in passing the act.

The first section of the act and the various other sections show that the Legislature had in mind each and every producer of the natural products of the soil and water therein specified, without making any unfair, unjust and unreasonable discrimination between them. But, if I am mistaken in the above conclusion, and if the act embraces corporations only, and is a tax on the business of severing the natural products enumerated, for commercial purposes, imposed under the name and guise of a franchise or privilege tax, it is in palpable violation of article 12, § 6, of the Constitution of 1874, which, while conferring power upon the General Assembly to alter any charter of incorporation, requires that, in doing so, no injustice shall be done to the corporators. The tax laid in this manner upon corporations, under the guise of a franchise or privilege tax, would place a burden upon the incorporators which, for the amount of the taxes imposed, would be a lien on their property which they could not escape, even if the charters were surrendered or annulled. After conferring upon corporations charter powers to conduct a business of severing natural products from the soil or water, and the same kind of business that is conducted by the other persons named in the statute, and in the same manner and under like circumstances, I cannot conceive of a greater injustice to the corporators than laying a severance tax upon their business, under the guise of a franchise or privilege tax, and allowing the other persons named in the statute to escape.

When corporations are chartered to do business in the State and, in the pursuit of that business and under powers conferred by their charter, acquire property, they have a right to possess, enjoy and dispose of that property just as natural persons may do. These are vested rights, and are as sacred under our Constitution as the same rights when enjoyed by individuals. I have therefore reached the conclusion that the act is a nonseverable

act; that, if it applies to corporations, it also applies to individuals; and that, if construed to apply to corporations only, the act is unconstitutional and void.

2. (a)   It is an egregious mistake to treat the word "privileges," as used in our Constitution, as synonymous with the term "pursuit," "business," or "occupation." We held just the reverse in *State ex rel. Norwood* v. *N. Y. Life Insurance Company*, 119 Ark. 214-318, where we said: "The words 'pursuits' and 'occupations' are synonymous, and are used in their common acceptation to denote the principal business, vocation, employment, calling or trade of individuals, that, but for some constitutional or statutory inhibition, could be exercised and enjoyed as of common right. But the word 'privilege' is not used in the Constitution in the same sense as the words 'pursuits' and 'occupations,' and it has an entirely different meaning." In the above case we quoted Judge MITCHELL's definition of a privilege in the case of *International Trust Co.* v. *American Loan & Trust Company*, 62 Minn. 501, as follows: "A privilege, as distinguished from a mere power, is a right peculiar to the person or class of persons on which it is conferred, and not possessed by others. As applied to a corporation, it is ordinarily used as synonymous with 'franchise,' and means a special privilege conferred by the State which does not belong to citizens generally of common right, and which cannot be enjoyed or exercised without legislative authority."

The Supreme Court of Tennessee, in *Mabry* v. *Tarver*, 1 Humph. 94, 98, gives an excellent definition of privilege as follows: "A privilege is the exercise of an occupation or business which requires a license from some properly constituted authority designated by general law, and not open to all or any one without such license." See also the numerous Tennessee cases cited in Constitution of Tennessee (Anno.) Shannon, p. 314.

Now, the tax imposed by this act, so far as corporations are concerned, does not purport to be a tax upon

the right or privilege of corporations to exist and carry on their business in this State. It is therefore not a tax on the franchise or privilege of being a corporation. The privilege or franchise tax on the right to do business as a corporation is laid on manufacturing and other business corporations, under § 1711 of Crawford & Moses' Digest. The businesses which such corporations carry on, after obtaining their license or privilege to do business, are powers, and not franchises. The distinction between the powers exercised by a corporation after it obtains a franchise and the franchise itself is well expressed by the great judge to whom I have just referred, in the case of *State v. Mfg. Co.*, 40 Minn. 213-225, as follows: "To be a franchise, the right possessed must be such as cannot be exercised without the express permission of the sovereign power, a privilege or immunity of a public nature which cannot be legally exercised without legislative grant. It follows that the right, whether existing in a natural or artificial person, to carry on any particular business is not necessarily or usually a franchise. The kinds of business which corporations (manufacturing corporations) are authorized to carry on are powers, but not franchises, because it is a right possessed by all citizens who choose to engage in it without any legislative grant. The only franchise which such corporations possess is the general franchise to be or exist as a corporate entity. Hence, if they engage in any business not authorized by the statute, it is *ultra vires*, or in excess of their powers, but not a usurpation of franchises not granted, nor necessarily a misuser of those franchises."

The act under review lays the severance tax upon corporations and all other classes named in the act, called the producers, who are engaged in the business of mining, cutting, or otherwise severing from the soil or water natural products for commercial purposes, etc. True, the act declares the tax to be a privilege or license tax. But for this declaration and inhibition of the busi-

ness named, without a license, such business could be carried on by corporations and all persons as a matter of common right. After corporations have received their franchise or license to be a corporation, under § 1711, *supra,* it is not then within the power of the Legislature, under the guise of a franchise or privilege tax, to lay another tax on their powers or the business which they have been authorized to do (and which is a business of common right in which all classes of persons may engage), in such manner as to do injustice to the corporators. In some jurisdictions, under precisely similar constitutional provision to article 16, § 5 of our Constitution, it is held that "a privilege is whatever business, pursuit, occupation or vocation affecting the public the Legislature chooses to declare and tax as such." *Mabry v. Tarver, supra.* Such is the rule in Tennessee, Minnesota, and other States. The Supreme Court of the United States, in a very recent opinion, has held that where such is the rule of the State court, a tax on pursuits and occupations which the Legislature of the State declared to be privileges, and taxed as such, will be upheld as being within the power of the State court to construe its own constitutional provision. See *Oliver Iron & Milling. Co.* v. *Lord,* 262 U. S. 172.

Our court, from a very early period in its history, has taken a different view, by holding that it is not within the power of the Legislature, under our Constitution, to declare and tax as a privilege, for State revenue, those pursuits and occupations which every one may follow as a matter of common right. The doctrine of our court is that these pursuits and occupations which are matters of common right cannot be taxed as privileges for State revenue. It is within the power of the Legislature, under our Constitution, to authorize counties and towns to regulate or tax callings and pursuits, but this cannot be done by towns or counties for the purpose of raising State revenue, nor by the Legislature itself for that purpose. Of course, if pursuits or occupations

which are matters of common right are conducted in a manner which injuriously affects the public interest, they may be required to pay a license tax for purposes of regulation under the police power. See *Stevens* v. *State,* 2 Ark. 291; *Gibson* v. *Pulaski County,* 2 Ark. 209; *Washington* v. *State,* 13 Ark. 752; *McGehee* v. *Mathis,* 21 Ark. 40; *Straub* v. *Gordon,* 27 Ark. 625; *Barton* v. *Little Rock,* 33 Ark. 442; *Little Rock* v. *Board,* 42 Ark. 160; *Baker* v. *State,* 44 Ark. 134; *State* v. *Washmood,* 58 Ark. 609.

Under the doctrine of *stare decisis,* these cases have become the settled law of this State, and, until they are overruled, which up to this hour has not been done, this court cannot consistently hold that it is within the power of the Legislature to declare and tax as privileges, for State revenue, pursuits and occupations which are matters of common right. To so hold would be to overrule all these cases, and, if they are to be overruled at all, it should be done expressly, and not by implication. Therefore, even if the tax under review were an occupation tax, it would be unconstitutional and void, under these numerous decisions of our court.

(b) The term "land" is real property, and includes whatever of natural origin is growing upon it to the highest heights, and whatever of such origin is contained within or beneath its surface to the deepest depths. 1 Washburn, Real Property, § 3. Therefore, ownership of the land embraces all the natural products mentioned in this act. They are taxed when a property tax is laid on the land.

Under our Constitution all lands in this State are declared to be allodial; and feudal tenures of every description with all their incidents are prohibited. Constitution 1874, article 2, § 28. An estate in free and pure allodium, and an estate in fee simple absolute, mean essentially the same thing, and they describe the most ample and perfect interest which can be owned in land. 4 Kent Com. *3; 2 Blk. Com. 45, note "f" (3), 47-105;

Greenleaf's Cruise on Real Property, 1 and 2, p. 6, §
13; 1 Wash. Real Property, p. 59; 1 Tiffany, Real Property, p. 18; Goodwin, Law Real Property, p. 4; Gray,
Rule Against Perpetuities, pp. 16-17, note.

Chancellor Kent says: "In this country every real
vestige of tenure has been annihilated." 4 Com. p. 25.
In declaring that lands in this State are allodial, the
framers of our Constitution meant that the owners of
land should have the absolute property therein, in their
own right, and complete dominion over the same. "This
is property in its highest degree." 2 Blk. Com. 104-105.
Therefore, the owners of land in our State have the
unrestricted and common right to use their lands in any
manner they choose, so long as such use is not detrimental
to the public weal.

In the light of the decisions of our own court, *supra,*
and the character of land ownership in this country, as
shown by the above authorities, how fallacious the notion
that the framers of our Constitution intended to confer
upon the Legislature the power to declare as a privilege,
and to tax as such, the right of appellees to use their
lands in the manner set forth in the act. Such a doctrine
is utterly at war with the genius of our institutions, State
and National. To declare and tax this common right as
a privilege is contrary to both the spirit and letter of the
law of real property in this country, and harks back to
that "deep and ancient night" when feudal lords "over
conquered realms and servile vassals held despotic
sway."

3. But, after a careful analysis of this act and a
careful reading and consideration of all briefs that have
been filed in this case, I have reached the conclusion that
the tax here imposed is a property tax, pure and simple.
Article 2, § 2, of our Constitution declares that "all men
are created equally free and independent, and have certain inherent and alienable rights, amongst which are
those of * * * acquiring, possessing and protecting
property." As is said by one of the great judges of this

court, Judge BATTLE, in the case of *Leep* v. *Ry. Co.*, 58 Ark. 407-422, "the enjoyment or deprivation of these rights and privileges constitutes the essential distinction between freedom and slavery; between liberty and oppression." The owners of the lands and waters containing the various natural resources are, by virtue of such ownership, also owners of the natural products at which this act was leveled.

Those products give to the lands, as shown by the facts alleged, and which are by the demurrer admitted to be true, their only value. The only possible use that can be made of these products is by severing them from the soil and water for commercial purposes. To deprive the owners, by law, of this use would be virtually a confiscation of their property, and to tax this use is to tax the only available purpose or use which the property has. Some of the timbers to be cut, as shown by the facts, are on lands situated on islands that are not susceptible of cultivation, and much of it on tracts that can never be made available for homestead or agricultural purposes. Therefore the timber thus situated cannot be, and is not to be, used for fencing purposes or ornamental shade trees or other uses about a home or farm. Likewise, the various other natural products named cannot be used, and have no value whatever, unless they are severed from the soil and water for commercial purposes. Such severance therefore is necessarily incident to the right of the use of this property, the only possible use that it has. Such is the plain common-sense meaning of the words of this statute. Since the act levies a tax on the business of "severing from the soil or water, for commercial purposes, natural resources," it lays upon the owners of such resources a tax burden which restricts them from the free enjoyment and use of these resources, from the only possible use they can make of their property. It deprives them of a common right, which they had under all our previous decisions, even down to *Standard Oil Co.* v. *Brodie,* 153 Ark. 114. Under

these decisions the Legislature cannot, by declaring it a "privilege or license tax," make it so. It occurs to me it requires a radical and wonderful metamorphosis of the plain language in which this act is couched to convert the property tax imposed into a privilege tax. We cannot do so, I protest most respectfully, but most earnestly, without entering the domain of legislation. As a property tax the act is in palpable violation of the *ad valorem* and uniform clause of article 16, § 5, of our Constitution.

My views on this subject are well expressed by the Supreme Court of Mississippi in *Thompson* v. *Kreutzer*, 72 So. 891, as follows: "A tax on the ownership of property, whatever it may be called, is a property tax. A tax on a thing is a tax on all its essential attributes, and a tax on an essential attribute of a thing is a tax on the thing itself. So that a tax on a thing owned is necessarily a tax on the right of the ownership thereof; and a tax on the right of ownership of a thing is necessarily a tax on the thing itself. No definition of property can be framed which does not include the right of ownership. Consequently, no tax can be imposed on the right of ownership which is not also a tax on property. It follows that a tax on the attributes of ownership, or on the right to make the only use of property for which it is of any value, is a tax on the property itself." And, in the case of *Thompson* v. *McLeod,* 112 Miss. 383, a privilege tax was levied upon persons pursuing the business of extracting turpentine from standing trees. The Supreme Court, in a learned and exhaustive opinion, held that the act laid a property tax in violation of the uniform and *ad valorem* clause of their Constitution, which is like ours. Among other things the court said: "There cannot be ownership of standing pine trees without an owner, and if you tax the standing trees with an *ad valorem* tax, and at the same time exact tribute from the owner as a condition precedent to his right to lay hands upon the tree, the State is imposing double taxation upon the tree itself. Section 112 of our Constitu-

tion solemnly declares that 'taxation shall be uniform and equal throughout the State,' and that 'property shall be taxed in proportion to its value.' If the tax here questioned can lawfully be imposed, then the Legislature of our State, in a desperate search for revenue, can effectually brush aside the essential feature of equality and uniformity demanded by the Constitution. The provision that property shall be taxed in proportion to its value would be nullified, and the integrity of the Constitution itself destroyed. * * * The conclusion of the whole matter, then, is that this tax operates necessarily and immediately as a property tax, and not as a privilege tax, and the statute imposing it violates § 112 of our Constitution, and the result reached by the learned chancellor is eminently correct, and his decree is accordingly affirmed." See also *Dawson* v. *Kentucky Distilleries Co.,* 255 U. S. 288. These are the only cases I have been able to find that are directly in point, and they better express my views than I am capable of doing. I do not care to say more. No refinements of language or subtleties of logic could make the proposition any plainer. I am not sufficiently skilled and dextrous in the use of the "Queen's English" to make an obvious truth any plainer, and to attempt to do so would be a mere juggling with words. The act is therefore unconstitutional and void. The decree of the trial court so holding is correct, and should be affirmed.