## McFARLANE *v.* GILLER.

### Opinion delivered May 16, 1927.

1. LICENSES—LIABILITY OF LESSOR FOR SEVERANCE TAX.—Under the Severance Tax Act of 1923, p. 73, § 8, providing that a tax "shall be required of the severer or producer actually engaged in the operation of severing natural products, whether as owner, lessee, concessionaire or contractor," the lessor of oil and gas lands *held* not liable for such tax, though part of the consideration was to be paid out of seven-sixteenths of the first oil and gas produced, saved and marketed from the leased premises.

2. MINES AND MINERALS—RIGHT OF LESSEE TO DEDUCT SEVERANCE TAX.—Where an oil and gas lease required the lessee to pay a deferred cash consideration out of the first production, the lessee could not deduct from the payment to the lessor the severance tax paid on the first production under the provisions of the Severance Tax Act (Acts 1923, p. 73), § 8.

Appeal from Union Chancery Court, Second Division; *George M. LeCroy,* Chancellor; affirmed.

*Mahony, Yocum & Saye* and *Powell, Smead & Knox,* for appellant.

*Patterson & Rector,* for appellee.

McHANEY, J.   Counsel for appellants have stated the case correctly as follows: "Anna W. Giller, the appellee, in the year 1923 executed an oil and gas lease to the appellants, J. H. McFarlane and Ed Hollyfield, thereby leasing and letting unto the said McFarlane and Hollyfield 80 acres of land in Union County, Arkansas, for a consideration of $25,000 in cash and $100,000 payable out of 7/16 of the first oil and gas produced, saved and marketed from the leased premises. Hollyfield and McFarlane entered upon the leased premises and produced therefrom a large quantity of oil and gas. These products were marketed to various pipe-line companies and refineries. As provided by the severance tax law, the pipe-line companies and refineries received such oil and gas, deducted 2½ per cent. of the purchase price thereof and paid such amount to the State of Arkansas as a severance tax.

"The various pipe-line companies and refineries receiving said oil paid the sum of $97,500 of the purchase money paid for the first oil or gas produced, saved and marketed from the leased premises, $2,500 (or 2½ per cent.) being remitted to the State of Arkansas as severance tax. After these payments were made, the appellants refused to make further payments to appellee. Appellee has instituted this suit, and contends that the sum of $100,000 payable from oil is not such an interest in oil as is taxable under the law.

"The sole question involved in this appeal is whether deferred money payments to be made from the production of oil and gas is such an interest as would be chargeable with the tax."

Demurrers to the separate answers filed were sustained, and, appellants declining to plead further, the court entered judgment against them for $2,500 and interest from May 9, 1925, at 6 per cent., and decreed a lien in favor of appellee on 7/16 of the oil and gas and on 7/16 interest in the lease, and ordered same sold to satisfy said debt, from which comes this appeal.

The contention of appellants is that, since the consideration for the oil and gas lease executed by appellee to appellants, McFarlane and Hollyfield, in addition to the $25,000 cash paid, is the agreement "to pay the lessor (appellee) the further and additional sum of $100,000, payable out of 7/16 of the first oil and gas produced, saved and marketed from said leased premises, as and when said oil and gas and either of said products are marketed by lessees, payments for said 7/16 of such oil and gas to be made by the pipe-line company or other purchaser thereof direct to the lessor for credit on said purchase price until fully paid, and for which payments the lessor shall have and does hereby reserve a lien on said undivided 7/16 of all the oil and gas produced from said lands, until said purchase price shall have been fully paid," appellee held such an interest in the oil produced therefrom as would make her liable for the

severance tax. This contention is based on § 8 of act 118 of the Acts of 1923, known as the Severance Tax Act, which is as follows:

"Tax due from severer. Except as otherwise in this section provided, the making of said reports and the payment of said privilege taxes shall be required of the severer or producer actually engaged in the operation of severing natural products, whether as owner, lessee, concessionaire or contractor.

"The reporting taxpayer shall collect or withhold out of the proceeds of the sale of the products severed the proportionate parts of the total tax due by the respective owners of such natural resources at the time of severance.

"And in the case of oil and gas, such production as shall be sold or delivered to any pipe-line company and transported by it through pipes connected with the oil or gas well of the owner, shall, notwithstanding such sale or delivery, be liable for the tax herein levied.

"Every producer actually operating any oil or gas well, quarry or other property from which natural resources are severed, under contract or agreement requiring payment direct to the owners of any royalty, excess royalty or working interest, either in money or in kind, is hereby authorized, empowered and required to deduct from any such royalty or other interest the amount of the severance tax herein levied before making such payment."

This section of said act has been construed by this court in *Miller Lumber Co.* v. *Floyd;* 169 Ark. 473, 275 S. W. 741, as follows:

"Section 8 provides that the payment of said privilege taxes shall be required of the severer or producer actually engaged in the operation of severing natural products, whether as owner, lessee, concessionaire or contractor.

"It is apparent then that the owner of lands who cuts down trees for the purpose of building fences or

repairing and constructing houses and other improvements on the land from the timber thus severed from the soil, is exempted from paying the tax. It is equally evident that, when the timber severed from the soil is sold, it falls within the terms of the act, and the tax must be paid by some one. To illustrate: If the owner of timber lands desired to sever it for the purpose of clearing the land and putting it in cultivation, and hired other persons to sever the timber for him, he would be required to pay the severance tax. If the owner should lease his land to another person for a designated number of years in order to have his lessee clear the land and put it in cultivation, and if the consideration for the lease, in whole or in part, was that the lessee should have the timber so removed from the land, the severance tax would have to be paid by such lessee. It will be noted that the language of the act is specific on this subject, and provides that the severer, or producer, as he is called, shall pay the tax. The act is very broad and comprehensive, and is levied upon all persons engaged in severing the timber from the soil for sale or commercial purposes, regardless of the purpose for which it is done.''

By way of comparison and further illustration, the court further said:

''Where a landowner makes a contract with another person to cut and remove the timber from his land for sale or commercial purposes, the owner must pay the severance tax; for such contractor and his servants who actually sever the timber act for the owner in the premises, and their act of severing the timber is the act of the owner.''

It will be noted, from the language of the lease above quoted, that appellee sold the whole lease, and not a part of it; that the $100,000 was to be paid to her in money as the oil and gas were produced, saved and marketed; that this was a part of the purchase price in money for the lease; that she did not retain in the lease any title to the leasehold, or to the oil and gas produced therefrom, but

only a lien on 7/16 thereof until the purchase price is paid in full, except the usual 1/8 royalty interest, about which there is no controversy. Manifestly she is not required to pay the severance tax, as contended by appellant, under the plain and unambiguous language of the lease, or the law, and under the construction placed on the act by the decision of this court heretofore cited.

The decree of the chancery court is correct, and it is accordingly affirmed.