MILLER LUMBER COMPANY *v.* FLOYD.

Opinion delivered October 5, 1925.

1. APPEAL AND ERROR—CONCLUSIVENESS OF FORMER OPINION.—The Supreme Court will not in the same cause reverse or revise its former decision recorded at a previous term.

2. TAXATION—SEVERANCE TAX ACT—CONSTRUCTION.—Under the severance tax act (Acts 1923, p. 67), which provides (in § 4) that the severance tax shall not be required of the individual owner of timber who utilizes timber cut from his premises in constructing and repairing structures thereon, *held* that the owner is liable for the tax whenever timber cut from the land is sold, or where, desiring to clear the land, he hires persons to sever the timber; but where he leases the land to be cleared and allows the lessee to remove the timber, the lessee is liable for the tax.

3. TAXATION—SEVERANCE TAX—LIABILITY OF LANDOWNER.—Where a landowner makes a contract with another person to cut and remove the timber from his land for sale or commercial purposes, the owner must pay the severance tax.

Appeal from Pulaski Chancery Court; *G. W. Hendricks,* Special Chancellor; affirmed.

STATEMENT BY THE COURT.

This suit was originally brought in the chancery court by appellants against appellees to enjoin them from enforcing an act of the Legislature approved February 14, 1923, and commonly known as our Severance Tax Act.

Appellees filed a demurrer to the complaint which was overruled by the chancery court, and appellees refusing to plead further, a final decree was entered of record granting the relief prayed for. An appeal was duly prosecuted to this court, and it was held that the act was not a violation of our Constitution, and the validity of the act was sustained by this court as an occupation tax. The decree of the chancellor was therefore reversed, and the cause remanded for further proceedings not inconsistent with the opinion. *Floyd* v. *Miller Lumber Co.,* 160 Ark. 17.

Upon a remand of the case, appellants filed an amended complaint in which they raised issues as to the proper construction of the act and its applicability to them. The chancery court sustained a demurrer to the amended complaint and gave appellants leave to amend further. Appellants refused to plead further, and it was decreed that the amended complaint be dismissed for want of equity. The case is again here on appeal.

*W. R. Satterfield, Hughes & Hughes, Daggett & Daggett* and *Coleman, Robinson & House,* for appellant.

*H. W. Applegate,* Attorney General, and *Brooks Hays,* Assistant, for appellee.

*John I. Moore, amicus curiae.*

HART, J., (after stating the facts.) This is the second appeal in this case. As above stated, the opinion on the former appeal is reported in 160 Ark. 17, under the style

*Floyd* v. *Miller Lumber Company.* Counsel for appellants say that the original complaint was drafted with a view of raising the sole issue of the constitutionality of the Severance Tax Act. The Legislature of 1923 passed an act to levy a privilege or license tax upon all persons, firms, and corporations engaged in the business of severing our natural resources from the soil or water. General Acts of Arkansas, 1923, p. 67.

Appellants attacked the act on the ground that it was in violation of so much of § 5, art. 16, of our Constitution, which reads as follows: "All property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State. No one species of property from which a tax may be collected shall be taxed higher than another species of property of equal value, provided the General Assembly shall have power from time to time to tax hawkers, peddlers, ferries, exhibitions and privileges, in such manner as may be deemed proper," etc.

Four members of this court for different reasons held that the statute was a tax upon persons engaged in a particular line of business, and that it was not a property tax.

Having reached the conclusion that the tax levied by the statute was a tax on business and not on property, four members of this court for different reasons united in a decision that the tax was an occupation tax and not a property tax, and therefore was not in violation of the provision of the Constitution above quoted. Whether this decision was right or wrong, it is the law of the case; it is *res judicata.* The rule has been long established in this State and uniformly adhered to that in the same cause this court will not reverse nor revise its former decisons. *Fortenberry* v. *Frazier,* 5 Ark. 200; *Porter* v. *Doe,* 10 Ark. 186; *Taliaferro* v. *Barnett,* 47 Ark. 359; *Vogel* v. *Little Rock,* 55 Ark. 609; *United States Annuity*

& Life Ins. Co. v. Peak, 129 Ark. 43; Danaher v. S. W. Tel. & Tel. Co., 137 Ark. 324; Ft. Smith Lbr. Co. v. State of Arkansas, 138 Ark. 581; Stuart v. Barron, 148 Ark. 380; Mo. Pac. Rd. Co. v. Walnut Ridge-Alicia Road Imp. Dist., 160 Ark. 297; St. L. S. F. R. Co. v. Kirkpatrick, 162 Ark. 65, and numerous other cases cited under the head of Appeal and Error in 1 Crawford's Digest, § § 405 and 5 Crawford's Digest, § 405. This general rule is grounded on public policy, experience, and reason. If all questions that have been determined by this court are to be regarded as still open for discussion and revision in the same cause, there would be no end of their litigation until the financial ability of the parties and ingenuity of their counsel had been exhausted. A rule that has been so long established and acted upon and that is so important to the practical administration of justice in the courts should be followed and not departed from.

On this question in the case of Hart Steel Co. v. Railroad Supply Co., 244 U. S. 294, Mr. Justice Clark, speaking for the Supreme Court of the United States, said: "This doctrine of res judicata is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and private peace,' which should be cordially regarded and enforced by the courts to the end that rights once established by the final judgment of the court of competent jurisdiction shall be recognized by those who are bound by it in every way, wherever the judgment is entitled to respect. Kessler v. Eldred, supra."

But counsel for appellants claim that the general rule of the law of the case should not be applied because their amended complaint has broadened the issues and raised among other things the question of the proper construction of the act and its applicability to appellants. This however does not bring them within any recognized exception to the general rule.

Counsel for appellants admit that their original complaint was drafted with the view of raising the sole

issue of the constitutionality of the Severance Tax Act and thereby admit that that issue was squarely and correctly submitted to the court for its hearing and determination. The act was held to be constitutional on the ground that it was an occupation tax, and no testimony or raising of additional issues as to the construction of the act or its applicability to appellants can prevent our former decision and judgment from being the law of the case. Indeed, it is difficult to see how any sort of testimony could change the issue as to the constitutionality of the act. That issue was squarely presented by a construction of the act and the section of our Constitution which it was claimed was violated.

Whatever views the different members may entertain as to the soundness of our former decision, the four members of the court who made it agree that the decision upholding the validity of the act as an occupation tax must be regarded as the law of the case.

In this connection, on account of the public importance of the act, the writer deems it appropriate to correct what he considers an erroneous interpretation of his separate opinion on the former appeal.

Counsel for appellants say that Mr. Justice HART bases the validity of the act on the police power of the State and naively add that they hope he will change his opinion in view of the fact that every one admits that the act was passed for the purposes of revenue. Taxation may be for the purpose of raising revenue, or for the purpose of regulation. Where it is levied for the purpose of regulation, it is an exercise of the police power of the State, and it is undoubtedly true that the statute in question was passed for the purpose of raising revenue. The writer was of the opinion that the act was not obnoxious to the constitutional provision quoted above, which is not a limitation upon the police power, but upon the taxing power of the State. The writer merely intended to say that the word, "privileges," as used in the Constitution, meant that the General Assembly should have power from time to time to tax occupations for

revenue which are privileges within the meaning of the proviso. He then stated that he thought the word "privileges" was broad enough to include all classes of occupations which might be regulated under the police power.

This is quite a different thing from saying that the tax was levied under the police power of the State. He intended to say that the tax was levied under the taxing power of the State, and he was only attempting to define the class of occupations upon which he thought the framers of the Constitution intended that the proviso should operate. In short, he thought that the framers of the Constitution, instead of using the word "privileges" to mean whatever occupations the Legislature might choose to declare and tax as such, undertook to restrict the meaning of the word to include only such occupations as might be regulated under the police power, but meant that the tax would be levied under the taxing power by the proviso of the Constitution just referred to and not under the police power of the State.

This brings us to a consideration of the construction of the statute with reference to the persons affected by its terms. One of the primary rules governing legislation of this sort is that the statute must act uniformly upon all within the class. In the application of the rule, the Supreme Court of the United States has held that the selection of all who are engaged within the State in mining ore, or producing ores on their own account, that is to say, as owners or lessees, as the subject of an occupation tax, is permissible under the Constitution of the State of Minnesota. *Oliver Iron Co.* v. *Lord*, 262 U. S. 172.

Section 1 of the present act provides in effect for the levying of a privilege or license tax upon each person, firm, or corporation called the producer engaged in the business of mining, cutting, or otherwise severing from the soil or water for commercial purposes natural resources including timber and all other forest products of the soil or water of Arkansas.

Section 4 contains a proviso that the act shall not apply to nor shall any severance tax be required of the individual owner of timber who occasionally severs or cuts from his own premises such stocks, logs, poles, or other forest products as are utilized by him in the construction or repair of his own structures or improvements. Continuing, it is declared that the purpose of this clause is to exempt therefrom such severers as utilize forest products to their own personal use and not for sale, commercial gain or profit.

Section 8 provides that the payment of said privilege taxes shall be required of the severer or producer actually engaged in the operation of severing natural products, whether as owner, lessee, concessionaire or contractor.

It is apparent then that the owner of lands, who cuts down trees for the purpose of building fences or repairing and constructing houses and other improvements on the land from the timber thus severed from the soil is exempted from paying the tax. It is equally evident that when the timber severed from the soil is sold, it falls within the terms of the act, and the tax must be paid by some one. To illustrate: if the owner of timber lands desired to sever it for the purpose of clearing the land and putting it in cultivation and hired other persons to sever the timber for him, he would be required to pay the severance tax. If the owner should lease his land to another person for a designated number of years in order to have his lessee clear the land and put it in cultivation, and if the consideration for the lease in whole or in part was that the lessee should have the timber so removed from the land, the severance tax would have to be paid by such lessee. It will be noted that the language of the act is specific on this subject and provides that the severer or producer as he is called shall pay the tax. The act is very broad and comprehensive, and is levied upon all persons engaged in severing the timber from the soil for sale or commercial purposes, regardless of the purpose for

which it is done.    The only exception is that the tax shall
not be paid where the timber severed is actually used
in erecting or repairing structures and other improve-
ments on the land.    The application of the timber in part
payment for clearing the land is a severing of it for com-
mercial purposes, although the primary purpose of sev-
ering it is to enable the land to be put in cultivation.
Where a landowner makes a contract with another person
to cut and remove the timber from his land for sale or
commercial purposes, the owner must pay the severance
tax; for such contractor and his servants who actually
sever the timber act for the owner in the premises, and
their act of severing the timber is the act of the owner.

The result of our views is that the decree of the
chancery court was correct, and will be affirmed...

WOOD, J., dissents.