COOK, COMMISSIONER OF REVENUES, *v.* WILSON.

4-7527                                                    187 S. W. 2d 7

Opinion delivered April 2, 1945.

*Herrn Northcutt,* for appellant.

*Murphy & Wood,* for appellee.

McFADDIN, J. The question presented is whether the State may collect from the purchaser and severer the severance tax on timber cut from lands belonging to the United States in a national forest.

Appellees are partners trading under the firm name of Wilson Lumber Company; and at various times they have severed timber in the United States national forest under "Timber Sale Agreement" with the United States Department of Agriculture. One such agreement was introduced; it is quite lengthy, but the salient provisions are: (1) The "purchaser" (appellees) agreed to purchase from a certain area in the national forest "all of the dead timber standing or down and all of the live timber marked or designated for cutting by a forest officer, merchantable as hereinafter defined for saw logs." (2) Merchantable live timber was to be marked for cutting by paint spots. (3) The purchaser agreed to deposit certain sums of money with the United States depository, to be credited against the purchase of the timber in the agreement; and the purchase price was $10.35 per thousand feet board measure. (4) After the timber was cut, the logs were to be arranged for scaling as often as a minimum of 350 logs was available; and when scaled, and the price of the particular lot determined, then the price of that lot was to be charged against the deposit made by the purchaser to the depository as previously mentioned. (5) The agreement recited that "the title to all timber included in this agreement shall remain in the United States until it has been paid for, and scaled, measured or counted." And, furthermore, that "no timber shall be cut until paid for, nor removed from the place or places agreed upon for scaling until scaled, measured, or counted by a forest officer." (6) In addition to cutting, removing, and paying for the merchantable timber, the

purchaser was also, under supervision of the forest officer, to cut and remove all dead or diseased timber, and dispose of it, from the acreage involved in the contract; and the purchaser was to participate, by payments and/or man power, in fighting forest fires. The logging camp and details of operation were prescribed in the contract. The purchaser, furthermore, made a fidelity bond for the faithful performance of the contract.

The Commissioner of Revenues filed his certificate in Garland county (§ 13384, Pope's Digest) claiming that the appellees owed the State of Arkansas the severance tax (and penalty) on the timber cut and removed by the appellees from the national forest under the said Timber Sales Agreement. The appellees filed suit in the Garland chancery court to enjoin the sheriff from serving execution issued on the certificate, and appellees claimed immunity from the tax because the timber came from lands of the national forest. The State Commissioner of Revenues intervened as a defendant in the suit, and sought to sustain the tax. The chancery court denied the claim of the State to collect the severance tax, and this appeal challenges that decree and presents the points herein discussed.

I. *Was the Arkansas Severance Tax Law Intended to Apply to Persons Severing Timber from Lands of the United States in a National Forest?* We answer this question in the affirmative. The original severance tax act was Act No. 118 of 1923. It has been frequently amended, and some of the amendatory acts are: Act No. 283 of 1929, Acts Nos. 116 and 138 of 1933, and Act No. 158 of 1937. The act with amendments, may be found in § 13371 *et seq.* of Pope's Digest. Briefly, the act: (1) levies a tax on the business of severing timber (§ 13371); (2) requires the severer or "producer" to obtain a permit from the State, and make regular reports (§ 13372); (3) provides that the tax shall remain a lien on each unit of production, and the tools and equipment used in the severing (§§ 13372 and 13376); (4) requires the reporting taxpayer to withhold the tax from the proceeds of the severed products (§ 13382); (5) provides that the severed

resources shall not be removed until the tax is paid (§ 13386).

The act contains only two exemptions, to-wit: (1) § 13374 provides that the act shall not apply to any individual owner of timber "who occasionally severs or cuts from his own premises such stocks, logs, poles, or other forest products, as are utilized by him in the construction or repair of his own structures or improvements, the purpose of this clause being to exempt therefrom such severers as utilize forest products to their own personal use, and not for sale, commercial gain, or profit." (2) Section 13375 provides an exemption "that no tax herein levied shall apply to the producer of switch ties, who hews out or makes such switch ties entirely by hand."

These are the only two exemptions found in the Severance Tax Law. The listing of these two exemptions necessarily excludes all other exemptions under the well-known rule of *expressio unius est exclusio alterius. St. L., I. M. & S. Ry. Co.* v. *Branch,* 45 Ark. 524; *Chisholm* v. *Crye,* 83 Ark. 495, 104 S. W. 167; 25 C. J. 220; 59 C. J. 984; 50 Am. Juris. 455. We reach the conclusion that the act levies a uniform tax on the business of severing timber in all instances except the two exemptions mentioned and therefore it was the intent of the Legislature to apply the law to all other cases; and the tax would apply to the case at bar, as the transaction here involved does not come within either exemption.

II. *Does the Immunity of a Federal Government Instrumentality Inure to the Benefit of the Appellees?* It is fundamental that the Federal Government and its instrumentalities are exempt from state taxation. *McCulloch* v. *Maryland,* 4 Wheat. 316, 4 L. Ed. 579; *Osborn* v. *Bank of U. S.,* 9 Wheat. 738, 6 L. Ed. 204; *Thompson* v. *U. P. R. R.,* 9 Wall (U. S.) 579, 19 L. Ed. 792; *Weston* v. *Charleston,* 2 Pet. 449, 7 L. Ed. 481; *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S. 429, 15 S. Ct. 673, 39 L. Ed. 759. On the other hand, the tax immunity does not inure to a person, firm or corporation merely because such

claimant has a contract with, or a grant from, the Federal Government. *Graves* v. *New York,* 306 U. S. 466, 59 S. Ct. 595, 83 L. Ed. 927, 120 A. L. R. 1466; *James* v. *Dravo Contracting Co.,* 302 U. S. 134, 58 S. Ct. 208, 82 L. Ed. 155, 14 A. L. R. 318; *Silas Mason Co.* v. *Tax Commission of Washington,* 302 U. S. 186, 58 S. Ct. 233, 82 L. Ed. 187; *Alabama* v. *King,* 314 U. S. 1, 62 S. Ct. 43, 86 L. Ed. 3; *Penn. Dairies* v. *Milk Control Commission,* 318 U. S. 261, 63 S. Ct. 617, 87 L. Ed. 748; *Fox Film Co.* v. *Doyal,* 286 U. S. 123, 52 S. Ct. 546, 76 L. Ed. 1010.

Prior to *James* v. *Dravo, supra,* decided December 6, 1937, a tax like the one at bar might not have been sustained, because in *Graves* v. *Texas Co.,* 298 U. S. 393, 56 S. Ct. 818, 80 L. Ed. 1236, and other cases, any effort to levy a tax that would ultimately fall on the Federal Government had been defeated. As was said by Mr. Justice ROBERTS in his dissenting opinion in *James* v. *Dravo, supra,* that case marked a radical departure from previous decisions. So we start with *James* v. *Dravo, supra,* and the companion case of *Silas Mason Co.* v. *Washington,* 302 U. S. 186, 58 S. Ct. 233, 82 L. Ed. 187, decided on the same day, as the beginning of the present rule of taxation in a case like the one at bar; and this rule is emphasized by *Alabama* v. *King, supra,* decided November 10, 1941.

. In *James* v. *Dravo, supra,* the Supreme Court of the United States upheld the Gross Sales and Income Tax Law of West Virginia, which levied an annual privilege tax "on account of business and other activities." The tax was on the business of contracting, and was 2 per cent. of the gross income. The Dravo Construction Company was a Pennsylvania corporation domesticated in West Virginia, and engaged in four contracts with the United States for the construction of locks and dams on the Ohio and Kanawha Rivers. The Supreme Court of the United States said that there were two questions: (1) whether the State had territorial jurisdiction to impose the tax, and (2) whether the tax was invalid as laying a burden on the operations of the Federal Government.

(1)   As to territorial jurisdiction, the court held that the State of West Virginia still had the right of taxation on activities located on the lands acquired by the United States by purchase or condemnation for the purpose of the improvement, reasoning: that even though the State of West Virginia had agreed to the U. S. Government's acquisition of title to the land, nevertheless, the State of West Virginia still retained its residuum of legislative jurisdiction; and that the United States held lands within the State for public purposes, but that ownership did not withdraw the lands from the jurisdiction of the State. Emphasis was placed on the terms of cession. It was pointed out that the State, in reserving the right to issue process, did not lose the right to tax an independent contractor; and that the Dravo Construction Company was an independent contractor, and could be taxed with respect to its activities carried on on the lands owned by the United States.

(2)   As to whether the tax was invalid, as a burden on the Federal Government, the court held that the Dravo Construction Company was an independent contractor, that the tax was not laid on the contract of the United States, but was laid on the business of the Dravo Construction Company, and that the West Virginia tax, so far as it was laid upon the gross receipts of the Dravo Construction Company, did not interfere in any substantial way with the performance of the Federal Government, and was a valid exaction.

In *Mason v. Washington, supra,* the tax was practically the same: a tax on a contractor engaged in building the Grand Coulee dam on the Columbia River. The tax was called an occupation tax. In that case the United States Government had acquired title to approximately 840 acres, and all of the work of the Mason Company was on that land. But the court held that when the United States acquired title to the land, it did not deprive the State of its residuum of legislative authority. The court used these words:

"The question  .  .  .  is whether the United States has acquired exclusive legislative authority so as to debar

the State from exercising any legislative authority including its taxing and police power in relation to the property and activities of individuals and corporations within the territory. The acquisition of title by the United States is not sufficient to effect that exclusion. It must appear that the State, by consent or cession, has transferred to the United States that residuum of jurisdiction which otherwise it would be free to exercise.''

The court held that when the United States acquired the lands, the State of Washington did not lose the residuum of jurisdiction.

We proceed now to test the case at bar against: (A) territorial jurisdiction, and (B) burden on government operations, as outlined in the two cases from the United States Supreme Court just mentioned.

(A) *Territorial Jurisdiction.* The federal legislation covering national forests is found in U.S.C.A. Title 16, § 471, *et seq.* The federal statutes show that national forests are established in two ways: (a) by presidential proclamation declaring certain lands of the public domain to be a national forest. This is under § 471, and only includes lands that had never passed from the United States. (See *Light* v. *U. S.*, 220 U. S. 523, 31 S. Ct. 485, 55 L. Ed. 570.) (b) The purchase or acquisition of other lands under § 516. These lands are acquired by the Federal Government only after the Legislature of the State has consented to such acquisition. This § 516 is the Act of Congress of March 1, 1911.

Regarding timber severed from lands incorporated into the national forest by presidential proclamation under § 471, we hold that the State has no right to collect the severance tax because the State never had the ''residuum of jurisdiction,'' as that language is used in the cases of *James* v. *Dravo* and *Mason* v. *Washington*, *supra*. Appellant claims that U.S.C.A. Title 16, § 480, gives the State the right to impose the tax in such a case. We construe that section as allowing civil and criminal jurisdiction, but not allowing taxation.

Regarding timber severed from lands incorporated into the national forest by *acquisition* under § 516, we hold that the State has the right to collect the severance tax, so far as territorial jurisdiction is concerned, because the State has the "residuum of jurisdiction." The Arkansas Legislature, by Act No. 148 of 1917, and by Act No. 108 of 1927 (see §§ 5646-7, Pope's Digest), gave the consent of the State of Arkansas to the acquisition by the United States of lands for the establishment, consolidation and extension of national forests as provided by the Act of Congress of March 1, 1911, "provided, that the State of Arkansas shall retain a concurrent jurisdiction with the United States in and over lands so acquired so far that civil process in all cases, and such criminal process as may issue under the authority of the State of Arkansas against any person charged with the commission of any crime without or within said jurisdiction, may be executed thereon in like manner as if this act had not been passed." A comparison of §§ 5646-7 of Pope's Digest with the West Virginia statutes shown in the case of *James* v. *Dravo, supra,* leads to the inevitable conclusion that the State of Arkansas still retains its residuum of jurisdiction over lands that became a part of the national forest under U.S.C.A. Title 16, § 516.

Appellees, in their claim for tax immunity, cite *C. O. & G. Ry.* v. *Harrison,* 235 U. S. 292, 35 S. Ct. 27, 59 L. Ed. 234, and *Oklahoma* v. *Barnsdall,* 296 U. S. 521, 80 L. Ed. 366. Each of these cases involved a severance tax levied by the State of Oklahoma on minerals from Indian lands, and in each case the tax was not permitted. We distinguish these cases in two ways: (1) these cases were decided prior to *James* v. *Dravo,* and (2) in these cases, the minerals were held by the United States Government as a trustee for Indian tribes. The State of Oklahoma had never ceded the lands to the United States Government, and therefore has no "residuum of legislative authority." The original title was in the United States as trustee for the Indians, and that original title in the United States prevented the State from exercising any tax rights without the permission of the United States.

(B) *Burden on Governmental Operations.* In their claim that no tax is due the State, appellees contend that cutting the timber was a federal matter, and the appellees operated as a federal instrumentality, and to impose a tax upon the appellees would be an indirect tax on a federal operation or instrumentality. We hold that the appellees, in cutting and removing the timber, acted as independent purchasers, and not as a government instrumentality, and that this is not a tax on governmental operations. In *James* v. *Dravo, supra,* and in *Mason* v. *Washington, supra,* the construction company was in each instance an independent contractor, and the tax was permitted. In *Alabama* v. *King, supra,* the contractor was buying supplies on a "cost-plus" contract, and a state sales tax was held to be collectible. In each case the claim for tax immunity was the same as the claim made by the appellees in the case at bar. Here the appellees were outright purchasers and severers, and therefore far more distinctly independent than were the contractors taxed in the cases just mentioned.

The Arkansas severance tax is a privilege tax or license tax; and is levied on the business of severing. Section 13371, Pope's Digest; *Floyd* v. *Miller Lbr. Co.,* 160 Ark. 17, 254 S. W. 450, 32 A. L. R. 811; same case on second trial, 169 Ark. 473, 275 S. W. 741; *McLeod, Commissioner,* v. *K. C. S. R.,* 206 Ark. 281, 175 S. W. 2d 391. The Arkansas severance tax is in no sense an *ad valorem* tax, so the case of *U. S.* v. *Alleghany County,* 322 U. S. 174, 64 S. Ct. 908, 88 L. Ed. 1209, has no application. The Arkansas severance tax is nondiscriminatory, as has been previously shown. It taxes, alike, all who sever timber for commercial gain, just as the appellees do here, since they are engaged in the lumber business. In the case of *Buckstaff Bath House Co.* v. *McKinley,* 198 Ark. 91, 127 S. W. 2d 802, there was an effort to avoid a state tax, on the plea of governmental agency, and we said:

"Imposition of the tax here does not, in any sense, interfere with the government's business."

The United States Supreme Court, in affirming the case (308 U. S. 358, 60 S. Ct. 279, 84 L. Ed. 322) said:

"The mere fact that a private corporation conducts its business under a contract with the United States does not make it an instrumentality of the latter."

In *James* v. *Dravo, supra,* the court quoted from *F. & D. Co.* v. *Pennsylvania,* 240 U. S. 318, 36 S. Ct. 298, 60 L. Ed. 664:

"Mere contracts between private corporations and the United States do not necessarily render the former essential governmental agencies and confer freedom from state control." See, also, *Collins* v. *Yosemite Park & Curry Co.,* 304 U. S. 518, 58 S. Ct. 1009, 82 L. Ed. 1502.

So we hold that the appellees are not entitled to claim any tax immunity as a governmental instrumentality, or because of governmental operations, and are liable for severance tax on all timber cut from land that became a part of the national forest by governmental acquisition under U.S.C.A. Title 16, § 516.

III. *Was There Any Ruling by the State Revenue Commissioner that Now Prevents the State from Enforcing the State Severance Tax?* Finally, appellees argue that the State should not now be allowed to collect the severance tax on timber cut from any lands in a national forest, because from 1923 to 1939 the State made no effort to collect any such tax from these appellees. No ruling of the Commissioner of Revenues is pleaded or proved, but it is argued that the failure of the State to make earlier demands now operates as a bar against the present demand. Executive construction of a statute is entitled to consideration by the courts, and should not be disregarded except for cogent reasons, or unless clearly erroneous. 59 C. J. 1027; 25 R. C. L. 1045; 42 Am. Juris. 392, *et seq.; Moses* v. *McLeod,* 207 Ark. 252, 180 S. W. 2d 110. But there are several reasons why appellees cannot sustain their contention about an executive construction:

In the first place, no affirmative ruling of the Commissioner of Revenues was pleaded or proved. The most that the appellees claimed was that *they* had not paid the tax from 1923 to 1937. Whether other persons similarly situated had paid the tax was not shown. The failure of

the Commissioner of Revenues to pursue appellees earlier cannot be used as a defense when suit is undertaken within the period of limitation. Secondly, if there had been an administrative ruling, it would yield to a judicial construction, when the ruling was shown to be erroneous. As stated in 42 Am. Juris. 398: "A construction of doubtful correctness may be sustained, but one manifestly wrong or clearly erroneous cannot be upheld."

Thirdly, from the passage of the Severance Tax Law in 1923 until the decision by the United States Supreme Court in *James* v. *Dravo, supra,* in 1937, the State Commissioner of Revenues might have thought that liability would not be sustained because of decisions of the United States Supreme Court in cases like *Green* v. *Texas Co.,* 298 U. S. 393, 56 S. Ct. 818, 80 L. Ed. 1236, and such earlier cases as *Dobbins* v. *Erie County,* 16 Peters 435, 10 L. Ed. 1022; *Collector* v. *Day,* 11 Wallace 118, 20 L. Ed. 122. The tax had all the time been levied by legislative action, but remained uncollected. The innovation of the decision of *James* v. *Dravo, supra,* is pointed out by Mr. Justice ROBERTS in his dissenting opinion. The State of Arkansas should not now be deprived of its tax because the Commissioner of Revenues failed for a number of years to collect the tax, not anticipating the decision of the United States Supreme Court in *James* v. *Dravo, supra.* Finally no administrative ruling of the Commissioner of Revenues of the State of Arkansas (and none has been shown) has worked prejudice to the appellees in the case at bar, because the tax here involved originated by reasons of transactions in 1940, and any delay from 1923 to 1937 has not prejudiced the appellees regarding a 1940 tax liability.

*To summarize and conclude,* we hold:

1. That the appellees are not liable to the State for severance tax on timber severed by them from lands held by the United States as original owner (U.S.C.A. Title 16, § 471); and to that extent the decree of the chancery court is affirmed;

2. That the appellees are liable to the State of Arkansas for severance tax and penalty on all timber severed by them from lands acquired by the United States under the Act of Congress of March 1, 1911 (U.S.C.A. Title 16, § 516). The stipulation in the record in this case shows that such severance tax and penalty is $276.35; and the decree of the chancery court as to this is reversed, and decree is rendered here for the State of Arkansas and against the appellees for said amount of $276.35 with interest from this date until paid.

GRIFFIN SMITH, C. J., dissents as to the reversal.