WILSON ET AL., DOING BUSINESS AS WILSON LUMBER
CO., *v.* COOK, COMMISSIONER OF REVENUES.

NO. 328.

Argued January 11, 1946.—Decided March 4, 1946.

476

*Wm. J. Kirby* submitted on brief for Wilson et al.

*O. T. Ward* argued the cause for the Commissioner of Revenues. With him on the brief was *R. S. Wilson.* In No. 328, *Thos. S. Buzbee* filed a motion to affirm or dismiss in part.

*Solicitor General McGrath, Assistant Attorney General Samuel O. Clark, Jr., Sewall Key, Arnold Raum, J. Louis Monarch* and *William Robert Koerner* filed a brief for the United States, as *amicus curiae.*

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

An Arkansas statute, Act 118 of 1923, Pope's Digest, Arkansas Statutes (1937), § 13371, imposes "a privilege or license tax . . . upon each person . . . engaged in the business of . . . severing from the soil . . . for commercial purposes natural resources, including . . . timber . . ." By § 13372, as a condition of the license, there is imposed on the severer an obligation to pay the tax and consent that the tax "shall . . . remain a lien on each unit of production until paid into the State Treasury . . ." Section 13375 fixes the tax at 7 cents per thousand feet of the timber severed. Section 13376 provides that the state "shall have a lien upon any and all natural resources severed from the soil . . ." In § 13382 it is provided that "the payment of said privilege taxes shall be required of the severer . . . actually engaged in the operation of severing natural products whether as owner, lessee, concessionaire or contractor. The reporting taxpayer shall collect or withhold out of the proceeds of the sale of the products severed the proportionate parts of the total tax due by the

respective owners of such natural resources at the time of severance."

Appellants in No. 328, a copartnership, entered into contracts with the United States for the purchase and severance of timber on national forest reserves located within the state, some of which were public lands of the United States when Arkansas was admitted to statehood and some of which were acquired by the United States by purchase with the consent of the state. The contracts of severance and purchase provided that "title to all timber included in this agreement shall remain in the United States until it has been paid for, and scaled, measured or counted." By the contracts the appellants were required in advance of severance to place with the Government representative advance installments of the estimated purchase price.

In the years 1937 to 1942, appellants, proceeding under their contract, severed timber from the forest reserves in question. An execution having been issued and delivered to the county sheriff, appellee in No. 328, and also appellant in No. 329, for collection of the tax assessed against appellants in No. 328 for the years in question, they brought the present suit in the state chancery court to enjoin the collection. The questions on which the parties ask decision are (a) whether the forest reserves which were public lands of the United States before Arkansas was admitted to statehood are subject to the taxing jurisdiction of the state; (b) whether the forest reserves acquired by the United States by purchase remain subject to the taxing authority of the state; and (c) whether the tax is unconstitutional as a tax laid upon the property or activities of the United States, or because the tax laid on plaintiffs imposed an unconstitutional burden on the United States.

The chancery court gave judgment for plaintiffs, enjoining collection of the tax. It held that if the tax "be

applied" to plaintiffs, it "would be a tax upon the operations of the Government of the United States," and that the tax "does not apply to the timber severed by the plaintiffs from the National Forest." On appeal the Supreme Court of Arkansas modified the judgment, holding that the state was without authority to lay a tax on the severance of timber from lands which were public lands of the United States when Arkansas was admitted to statehood; that the authority of the state to lay the tax extended to transactions occurring on the forest reserve acquired by the United States by purchase; and that the present tax assessed against plaintiffs for the severance of timber on forest reserves of this class did not lay an unconstitutional burden on the United States. 208 Ark. 459, 187 S. W. 2d 7.

Plaintiffs have appealed, in No. 328, from so much of the judgment as sustained the tax with respect to lands acquired by the United States by purchase, urging in their assignments of error that the Supreme Court of Arkansas erred in reversing the judgment of the chancery court, "which held to be void the severance tax statute," and in holding that the severance tax law is not repugnant to the supremacy clause, Art. VI, cl. 2 of the Constitution, or to Art. IV, § 3, cl. 2, conferring on Congress power to dispose of "and make all needful Rules and Regulations respecting . . . Property belonging to the United States . . ." Defendant, appellant in No. 329, seeks by his appeal to reverse so much of the judgment as denied the right to levy the tax for severance of timber from forest lands reserved from the public domain. On submission of the jurisdictional statements in this Court we postponed to the hearing on the merits consideration of our jurisdiction in No. 328. In No. 329 we dismissed the appeal for want of jurisdiction. § 237 (a) of the Judicial Code as amended, 28 U. S. C. § 344 (a). Treating the papers on which the ap-

peal was allowed as a petition for writ of certiorari, as required by § 237 (c) of the Judicial Code as amended, we granted certiorari.

Under § 237 of the Judicial Code we are without jurisdiction of the appeal in No. 328, unless there was "drawn in question" before the Supreme Court of Arkansas "the validity of a statute" of the state, "on the ground of its being repugnant to the Constitution, . . . or laws of the United States." The purpose of this requirement is to restrict our mandatory jurisdiction on appeal, *Memphis Gas Co.* v. *Beeler,* 315 U. S. 649, 651, and to make certain that no judgment of a state court will be reviewed on appeal by this Court unless the highest court of the state has first been apprised that a state statute is being assailed as invalid on federal grounds, *Charleston Assn.* v. *Alderson,* 324 U. S. 182, 185-6 and cases cited, or, when the statute, as applied, is so assailed, until it has opportunity authoritatively to construe it. *Fiske* v. *Kansas,* 274 U. S. 380, 385 and cases cited. This jurisdictional requirement is satisfied only if the record shows that the question of the validity under federal law of the state statute, as construed and applied, has either been presented for decision to the highest court of the state, *Wall* v. *Chesapeake & Ohio R. Co.,* 256 U. S. 125, 126; *Citizens National Bank* v. *Durr,* 257 U. S. 99, 106, or has in fact been decided by it, *Nickey* v. *Mississippi,* 292 U. S. 393, 394; *Whitfield* v. *Ohio,* 297 U. S. 431, 435-6, and that its decision was necessary to the judgment. *Cuyahoga Power Co.* v. *Northern Realty Co.,* 244 U. S. 300, 304 and cases cited. The record in this case does not disclose that at any time in the course of the proceedings in the state courts plaintiffs asserted the invalidity of a state statute on any federal ground. The bill of complaint in the chancery court set up only that the demand of the state for the tax "is an illegal and void exaction" and "is in violation of " Art. IV, § 3, cl. 2 and of Art.

VI, cl. 2 of the Constitution. There were no assignments of error in the Supreme Court of Arkansas.

As the record does not show that the plaintiffs presented for decision to the state Supreme Court any federal question, they have no appeal to this Court unless the opinion of the state Supreme Court shows that that court ruled on the validity of a state statute under the laws and Constitution of the United States. *Charleston Assn.* v. *Alderson, supra,* 185–6 and cases cited. That court's opinion, while holding that the "tax law" was applicable to "persons severing timber from lands of the United States in a national forest," does not indicate that plaintiffs raised there, or that the court passed upon, the validity of the statute as applied. The court considered only the validity of "the tax," not that of the statute.

With reference to plaintiffs' liability for the tax, it decided only that the state "has the right to collect the severance tax, so far as territorial jurisdiction is concerned," for severance of timber from lands acquired by the United States by purchase, and that plaintiffs could not claim the benefits of the immunity, if any, of the Federal Government from "the tax," since it was imposed on plaintiffs, not the Government or its property. It said that the Government was not constitutionally immune from such economic burden as might be passed on from the taxpayer to the Government by reason of the effect of the tax paid by the severers, citing *James* v. *Dravo Contracting Co.,* 302 U. S. 134 and *Alabama* v. *King & Boozer,* 314 U. S. 1. Being asked to enjoin the collection of the tax, the state court contented itself with holding that the tax, which was assessed on plaintiffs and not the Government, imposed no burden on the Government which infringed its implied constitutional tax immunity. Since the collection of a tax by a state officer, as here, may or may not offend against the Constitution, independently of the

constitutionality of a statute, see *Nashville, C. & St. L. R. Co.* v. *Browning,* 310 U. S. 362, 369, the state court, in holding the tax constitutional, did not necessarily pass on the constitutional validity of the statute.

In order to support an appeal to this Court it is necessary that the question of the validity of the state taxing statute be either presented to the state court or decided by it. It is not sufficient merely to attack, as here, the tax levied under the statute, or "the right to collect the tax" which has been levied, or to show that the validity of the tax alone has been considered. *Charleston Assn.* v. *Alderson, supra,* 185, and cases cited. For "the mere objection to an exercise of authority under a statute, whose validity is not attacked, cannot be made the basis" of an appeal. *Jett Bros. Co.* v. *City of Carrollton,* 252 U. S. 1, 6. It is for this reason that we have held that an appeal will not be sustained where there has been only an attack upon a tax assessment, *Jett Bros. Co.* v. *City of Carrollton, supra; Miller* v. *Board of County Comm'rs,* 290 U. S. 586; *Memphis Gas Co.* v. *Beeler, supra,* 650; *Commercial Credit Co.* v. *O'Brien,* 323 U. S. 665; *Charleston Assn.* v. *Alderson, supra,* 185, or, as here, upon a "tax," *Citizens National Bank* v. *Durr, supra,* 106; *Indian Territory Illuminating Co.* v. *Board of County Comm'rs,* 287 U. S. 573; *Baltimore National Bank* v. *State Tax Comm'n,* 296 U. S. 538; *Irvine* v. *Spaeth,* 314 U. S. 575, or upon the attempt to collect a tax, *Jett Bros. Co.* v. *City of Carrollton, supra.*

Since plaintiffs' attack is directed to the validity of the tax as laid, and not to the validity of the statute, as applied, we are without jurisdiction of their appeal under § 237 of the Judicial Code. Treating the appeal as a petition for writ of certiorari, as required by § 237 (c) of the Judicial Code, we grant certiorari, as we did in No. 329. We can consider only the federal questions passed upon by the state Supreme Court.

Our decision in *James* v. *Dravo Contracting Co., supra,* and in *Alabama* v. *King & Boozer, supra,* and the cases

cited in those opinions, can leave no doubt that the Supreme Court of Arkansas correctly held that plaintiffs, who are taxed by the state on their activities in severing lumber from Government lands under contract with the Government, cannot claim the benefit of the implied constitutional immunity of the Federal Government from taxation by the state.

Plaintiffs now, for the first time, assail the tax and the statute imposing it, on the ground that the Act requires the severer to collect the tax from the owner of the timber at the time of severance, Pope's Digest, § 13382, and gives to the state a lien on the land from which the lumber is severed, *id.*, § 13374, and a lien upon the severed timber, *id.*, § 13376, even though title to the severed product has not passed to the taxpayer. They contend that the Act thus purports to place a forbidden tax directly on the United States. Cf. *Mayo* v. *United States*, 319 U. S. 441.

But we are not free to consider these grounds of attack for the reason that they were not presented to the Supreme Court of Arkansas or considered or decided by it. While the constitutional question now sought to be presented is in some measure related to that decided by the state court, and, like it, arises under the implied constitutional immunity of the Federal Government from state taxation, it is not merely "an enlargement" of an argument made before the state court, but is so distinct from the question decided by the state court that our decision of the issue raised there would not necessarily decide that now sought to be raised. Compare *Dewey* v. *Des Moines*, 173 U. S. 193, 197, 198. We are therefore not free to consider it.

"In reviewing the judgment of a state court, this Court will not pass upon any federal question not shown by the record to have been raised in the state court or considered there, whether it be one arising under a different or the same clause in the Constitution with respect to which other questions are properly presented." *New York ex rel. Cohn*

v. *Graves*, 300 U. S. 308, 317, and cases cited. For, as we said in *McGoldrick* v. *Compagnie Generale*, 309 U. S. 430, 434-435, "In cases coming here from state courts in which a state statute is assailed as unconstitutional, there are reasons of peculiar force which should lead us to refrain from deciding questions not presented or decided in the highest court of the state whose judicial action we are called upon to review. Apart from the reluctance with which every court should proceed to set aside legislation as unconstitutional on grounds not properly presented, due regard for the appropriate relationship of this Court to state courts requires us to decline to consider and decide questions affecting the validity of state statutes not urged or considered there. It is for these reasons that this Court, where the constitutionality of a statute has been upheld in the state court, consistently refuses to consider any grounds of attack not raised or decided in that court." See also *Keokuk & Hamilton Bridge Co.* v. *Illinois*, 175 U. S. 626, 633; *Bolln* v. *Nebraska*, 176 U. S. 83, 89-92; *New York* v. *Kleinert*, 268 U. S. 646, 650-1; *Whitney* v. *California*, 274 U. S. 357, 362, 363; *Saltonstall* v. *Saltonstall*, 276 U. S. 260, 267-8.

In view of the lien provisions of the statute and its provisions which purport to authorize the taxpayer to collect the tax from the owner of the severed timber, here the Government, it is suggested that we cannot rightly adjudge that the state is entitled to recover the tax on the transactions of severance involved, without determining the applicability of these provisions to the Government and their validity if so applied. We are not now concerned with the Government's liability to the statutory lien or for payment of the tax. It will be time enough to consider its interests when some effort is made to enforce the lien or collect the tax from the United States. We obviously do not by our judgment against the plaintiffs

impose the tax on the Government. Their property alone is subject to the lien of the present judgment and to execution issued under it. They cannot recover the amount of the judgment from the Government unless the Constitution permits. And if it forbids they obviously will not collect the tax. In neither case does our judgment impose any burden on the United States. We are not called on to determine whether plaintiffs could have successfully contested their liability in the state courts or here, if the contentions were properly raised, upon the ground that they would be unable to collect the tax from the Government, either because the provision purporting to allow such collection is inapplicable where the owner is the Government or, if applicable, invalid, or on the ground that the tax, applied to them without recourse against the Government, would deny to them the equal protection of the laws.

The state, construing its own law, has rendered an unconditional judgment holding plaintiffs liable for the tax. For purposes of our review we must assume that the judgment conforms to state law. Hence we are called on to determine only federal questions properly raised on the record. Considering the only question of the tax immunity of the United States which is so raised, we decide for reasons already stated that the tax now laid and sustained imposes no unconstitutional burden on the Federal Government. No question arising under the Fourteenth Amendment is raised by the record either in the state courts or here, and we are without jurisdiction to pass upon it.*

---

*Even if the opinion of the Supreme Court of Arkansas had proceeded on a ground so unexpected as to make timely, by petition for rehearing, the raising of the federal questions now for the first time advanced, compare *Saunders* v. *Shaw*, 244 U. S. 317; *Ohio* v. *Akron Park District*, 281 U. S. 74, 79, plaintiffs in their petition for rehearing did not suggest them.

A further question is whether the lands in the forest reserve, which were purchased for that purpose by the United States, are within the territorial taxing jurisdiction of the state. The answer turns on the interpretation of the statute of the United States authorizing the acquisition of the lands, §§ 7 and 12 of the Act of March 1, 1911, c. 186, 36 Stat. 961, 16 U. S. C. §§ 480, 516, and of the state statute of Arkansas authorizing the sale. Pope's Digest, § 5646. The meaning of both statutes, as applied in this case, is a federal question, since upon their construction depend rights, powers and duties of the United States. *Mason Co.* v. *Tax Comm'n,* 302 U. S. 186, 197, and cases cited.

The statute of Arkansas consenting to the purchase of forest lands by the United States, provided that the state should "retain a concurrent jurisdiction with the United States in and over lands so acquired . . .," to issue and execute "civil process in all cases, and such criminal process as may issue under the authority of the State . . ." It made no express grant or reservation of legislative power over the areas purchased. Hence the statute cannot be taken as having yielded or intended to surrender to the Federal Government the state legislative jurisdiction over the area in question, so far as exercise of that jurisdiction is consistent with federal functions. Any doubt as to the effect of such a grant by the state in conferring exclusive legislative jurisdiction over the territory which is acquired by the Federal Government is removed by the provisions of the federal statute.

Section 12 of the federal statute, authorizing the purchase, provided:

"That the jurisdiction, both civil and criminal, over persons upon the lands acquired under this Act shall not be affected or changed by their permanent reservation . . . as national forest lands, except so far as

the punishment of offenses against the United States is concerned, the intent and meaning of this section being that the State wherein such land is situated shall not, by reason of such reservation and administration, lose its jurisdiction nor the inhabitants thereof their rights and privileges as citizens or be absolved from their duties as citizens of the State."

By this enactment Congress in effect has declined to accept exclusive legislative jurisdiction over forest reserve lands, and expressly provided that the state shall not lose its jurisdiction in this respect nor the inhabitants "be absolved from their duties as citizens of the State." Compare *Mason Co.* v. *Tax Comm'n, supra; Atkinson* v. *Tax Comm'n*, 303 U. S. 20; *Collins* v. *Yosemite Park Co.*, 304 U. S. 518, 528; *Stewart & Co.* v. *Sadrakula*, 309 U. S. 94, 99.

Our conclusion, based on the construction of the interrelated state and federal statutes, is that the state has territorial jurisdiction to lay the tax upon activities carried on within the forest reserve purchased by the United States.

What we have said of the argument that the tax assessed on plaintiffs is an unconstitutional burden on the Government, is applicable to the tax assessed for severance of timber from forest reserve lands which, from the beginning, have been a part of the public domain. That tax is likewise valid if the state has legislative jurisdiction over such lands within its boundaries.

Upon admission of Arkansas to statehood in 1836 upon an equal footing with the original states (Act of June 15, 1836, c. 100, 5 Stat. 50), the legislative authority of the state extended over the federally owned lands within the state, to the same extent as over similar property held by private owners, save that the state could enact no law which would conflict with the powers reserved to the United States by the Constitution *Ft. Leavenworth R.*

*Co.* v. *Lowe,* 114 U. S. 525, 539; *Utah Power & Light Co.* v. *United States,* 243 U. S. 389, 404. Such authority did not pass to the United States by virtue of the provisions of Article I, § 8, cl. 17 of the Constitution, which authorize it "to exercise exclusive Legislation . . . over all Places purchased by the Consent of the Legislature of the State in which the Same shall be."

Since the United States did not purchase the lands with the consent of the state, it did not acquire exclusive jurisdiction under the constitutional provision, and there has been no cession of jurisdiction by the state. *Surplus Trading Co.* v. *Cook,* 281 U. S. 647, 651; *Mason Co.* v. *Tax Comm'n, supra,* 210. Although Arkansas has, by § 5647, Pope's Digest, conferred on Congress power to pass laws, civil and criminal, for the administration and control of lands acquired by the United States in Arkansas, it has ceded exclusive legislative jurisdiction neither over lands reserved by the United States from the public domain nor over lands acquired in the state. *Ft. Leavenworth R. Co.* v. *Lowe, supra,* 530, 531. It follows that the state has retained its legislative jurisdiction, which it acquired by statehood, over public lands within the state, which have been included within the forest reserve.

We conclude that the state has legislative jurisdiction over the federal forest reserve lands located within it, whether they were originally a part of the public domain of the United States, or were acquired by the United States by purchase, and that the tax assessed against plaintiffs is not subject to any constitutional infirmity, or to any want of taxing jurisdiction of the state to lay it with respect to transactions on the federal forest reserve located within the state.

The judgment is reversed insofar as it adjudged plaintiffs not liable for the tax on severance of timber from lands held by the United States as original owner, and the cause

is remanded to the Supreme Court of Arkansas for further proceedings not inconsistent with this opinion. In all other respects the judgment is affirmed. On the remand the state courts will be free, so far as their own practice allows, to determine any state questions here involved and any federal questions not already decided by this opinion. Compare *Schuylkill Trust Co.* v. *Pennsylvania,* 302 U. S. 506, with *Schuylkill Trust Co.* v. *Pennsylvania,* 296 U. S. 113.

*So ordered.*

MR. JUSTICE DOUGLAS concurs in the result.

MR. JUSTICE JACKSON took no part in the consideration or decision of these cases.

Opinion of MR. JUSTICE RUTLEDGE, dissenting, announced by the CHIEF JUSTICE.

In No. 328 the Court sustains the application of the Arkansas severance tax to the appellants.[1] In my judgment the cause should be remanded to the state court for it to determine the applicability of the lien and collection provisions to the United States, or their severability, and in the light of that determination to ascertain the constitutional validity of the tax as applied to appellants. Those issues are inescapable on the record in this case. For until they are determined any decision here can affect only a tax of uncertain incidence, unless the Court in sustaining it means to rule, as I think the Arkansas court ruled, that the tax is valid whether or not the statute's lien and collection provisions[2] apply to the United States as owner of the land and the severed timber.

---

[1] On the jurisdictional discussion of the Court the appellants are, of course, petitioners on certiorari.

[2] Pope's Digest Ark. (1937) §§ 13371–13395. The statute was first enacted in 1923. Acts of Arkansas, 1923, Act 118. It was materially

Neither course is properly open to us. Since the Arkansas court, as this Court's opinion does not dispute, has sustained the tax without deciding whether the lien and collection provisions are severable and inapplicable to the United States, we are completely at loss to know whether the tax rests ultimately upon the Government, as it does under Arkansas law on all other owners not expressly exempted. Consequently we have no determinable issue, but only a speculative inquiry of a sort beyond the tradition and, in my opinion, the jurisdiction of this Court to decide. On the other hand, if the effect of the decision here, as in the Arkansas court, is to sustain the tax regardless of whether the lien and collection provisions apply in whole or in part to the United States, the result is substantially to sustain a tax laid by the state directly on the Government. This result is as unacceptable as to render an advisory opinion upon the validity of a tax of uncertain and speculative application.

From *McCulloch* v. *Maryland*, 4 Wheat. 316, to now the rule has remained that the states are without power, absent the consent of Congress, to tax the United States, whether with reference to its property or its functions.

---

amended in 1929, but its essential scheme remained the same. Acts of Arkansas, 1929, Act 283. See notes 4–6, 9–12, and text, for the substance and effects of the provisions.

Although, as I read its opinion, the Arkansas court carefully refrained from ruling upon their severability and therefore also their applicability to the Government (see text *infra*), the lien and collection provisions were before it, were cited in the opinion, and were necessarily involved in the issues presented. The court appears to have ruled that the tax is valid as applied to the appellants regardless of whether these provisions are severable or are applicable to the United States. That it did so furnishes no ground for believing that the issues relating to them were not presented or were waived. The petition for rehearing, as well as the opinion itself, demonstrates the contrary. The first ground set forth was: "The court erred in holding that the tax was not a direct tax on the United States."

*United States* v. *Allegheny County,* 322 U. S. 174, 177. That rule is of the essence of federal supremacy. It is not to be chipped away by ambiguous decisions of state courts or easy assumptions relating to their effects which ignore the direct impact of state taxes where they have no right to strike.

This is true regardless of the vagaries of decision, at different periods, in allowing expansion of the Government's immunity to include others. Recent recessions from former broad extensions of this kind have settled that ultimate economic incidence upon the Government of a state tax laid upon others is not alone enough to invalidate the tax. *James* v. *Dravo Contracting Co.,* 302 U. S. 134; *Alabama* v. *King & Boozer,* 314 U. S. 1; see *Penn Dairies* v. *Milk Control Comm'n,* 318 U. S. 261, 269.[3] But this does not mean either that such incidence of the tax is irrelevant to its validity or that all state taxes purporting to be laid upon others but in fact reaching the Government are valid.

It is still true that "the taxpayer is the person ultimately liable for the tax itself." *Colorado Bank* v. *Bedford,* 310 U. S. 41, 52; *Federal Land Bank* v. *Bismarck,* 314 U. S. 95. If the person who must pay the tax in the first place is required by the taxing statute to collect the tax or an equivalent amount from the United States, the tax is upon the United States. "State law could not obligate the Central Government to reimburse for a valid tax, much less for an invalid one." *United States* v. *Allegheny County,* 322 U. S. 174, 189. Although the Court has gone far in permitting the states to force one private person to act as tax collector for another, cf. *Monamotor Oil Co.* v. *Johnson,* 292 U. S. 86; *Felt & Tarrant Mfg. Co.* v. *Galla-*

---

[3] See Powell, The Waning of Intergovernmental Tax Immunities (1945) 58 Harv. L. Rev. 633; Powell, The Remnant of Intergovernmental Tax Immunities (1945) 58 Harv. L. Rev. 757.

*gher,* 306 U. S. 62; *General Trading Co.* v. *Iowa Tax Comm'n,* 322 U. S. 335, and dissenting opinion at 339, that device cannot be utilized by the states to lay taxes on the United States. Nor has it been held heretofore, if it is now, that a tax purporting to be laid upon a private individual or concern is valid regardless of whether the provisions of the state taxing statute for passing on the tax to another are applicable to the United States or are valid if so applied.

I am unable to comprehend the effect of the Court's decision. If it is ruling *sub silentio* or *ex hypothesi* that the lien and collection provisions of the Arkansas statute, for any application to the Government, are inapplicable or severable, we have no right to make such a decision. That is the business of the Arkansas courts. If the ruling is that the tax is valid even though those provisions are applicable to the United States, then for the first time the Court is overruling the basic principle of *McCulloch* v. *Maryland.* If the decision is, finally, that the tax is valid whether or not the lien and collection provisions are applicable or severable, then it embodies both faults.

I do not think the Court means to overrule *McCulloch* v. *Maryland.* Nor does it purport to interpret or determine the Arkansas law concerning either applicability or severability of the statute's provisions. But unless it is doing this, without so stating, I see no escape from the other horn of the dilemma. Either the tax as applied is valid or it is invalid. Whether it is valid or not depends on whether the lien and collection provisions apply to the United States, for they place the tax directly upon the owner. That issue is inescapable in this case, whether in the Arkansas court or here.

I do not think the Arkansas court decided either that the lien and collection provisions are inapplicable to the United States or that they are severable from the re-

mainder of the statute, notwithstanding it had those provisions before it, cited them though without ruling upon them, and proceeded to sustain the application of the tax to appellants. I think it clear that the court avoided making such a ruling. In my opinion the Arkansas decision in effect, though not in words, was that the tax is valid regardless of whether the enforcement provisions apply to the United States; which in effect was to rule that the tax had been constitutionally applied even though the collection provisions are applicable to the United States, to the extent at least of the withholding provisions.

My reasons for this view are several. In the first place, the court's opinion, though noting the collection and lien provisions and the contract's term that title to the severed timber should remain in the Government "until it has been paid for, and scaled, measured or counted," does this in the introductory statement of the case and then proceeds through a lengthy discussion without again referring to those provisions.

Moreover they provide plainly that where the severer is different from the owner, the former must pay the tax but he is required to pass it on to the owner.[4] A further provision requires him to withhold the amount of the tax from any money or severed property in kind due the owner under their contract.[5] Another section gives the state a

---

[4] Pope's Digest Ark. § 13382 provides: "The reporting taxpayer *shall* collect or withhold *out of the proceeds of the sale* of the products severed the proportionate parts of the total tax *due by the respective owners of such natural resources* at the time of severance." (Emphasis added.)

[5] The provision reads: "Every producer actually operating any oil or gas well, quarry or other property from which natural resources are severed, under contract or agreement requiring payment direct to the owner of any royalty, excess royalty or working interest, either in money or in kind, is hereby authorized, empowered *and required* to deduct from any such royalty or other interest the amount of the

lien on the severed resources for the tax and penalties.[6] The clear effect of the provisions requiring "the reporting taxpayer" to "collect or withhold" the amount of the tax from the owner is to give him a defense to the owner's action to recover the full contract price for the severed resources and an equally clear right of action against the owner for the amount of the tax.

Thus the scheme of the tax is to place both its ultimate legal and its ultimate economic incidence on the owner. The tax in terms is "due by the respective owners of such natural resources." [7]  It is "a privilege tax or license tax; and is levied on the business of severing," as the Arkansas court declared in this case.  208 Ark. 459, 468, 187 S. W. 2d 7, 12.  But it is ultimately, as that court has also declared, though not expressly in this case, a privilege or license tax levied upon *the owner's* business of severing, for it applies to him whenever he severs or permits severance for sale; and "sale" includes turning over the timber

severance tax herein levied before making such payment." Pope's Digest Ark. § 13382. (Emphasis added.)

"Producer" is defined as every person, firm, corporation or association of persons "engaged in the business of mining, cutting or otherwise severing from the soil or water for commercial purposes natural resources, including minerals and ores, pearls, diamonds, and other precious stones, bauxite, fuller's earth, phosphates, shells, chalk, cement, clay, sand, gravel, asphalt, ochre, oil, gas, salt, sulphur, lignite, coal, marble, stones and stone products, timber, turpentine and all other forest products and all other natural products of the soil or water of Arkansas." Pope's Digest Ark. § 13371.

[6] Pope's Digest Ark. § 13376: "The State of Arkansas shall have a lien upon any and all natural resources severed from the soil or water for the tax and penalties herein imposed and, in addition thereto, said lien shall attach to the well, machinery, tools and implements used in severing of such resources."

As the section was enacted originally in 1923 the provision for attachment of the lien to machinery, etc., used in severing was not included. This was added by amendment in 1929. Cf. note 2.

[7] See note 4.

to one who clears the land as payment for the clearing, although his purpose in doing this is only to make the soil available for tilling.[8]

Moreover, as the Arkansas court did hold specifically in this case, the act contains only two exemptions, neither of which applies to the United States.[9]   And on this ground, together with the maxim *expressio unius*, it ruled the act applicable to the severance of timber "in all instances except the two exemptions mentioned." [10]

That ruling, it seems to me, is especially significant when it is considered not only in the light of the court's failure to make further reference to or ruling upon the collection provisions, but also in view of the Arkansas court's previous decisions.   Thus, in *Miller Lumber Co.* v. *Floyd,* 169 Ark. 473, 480, 275 S. W. 741, the court held: "Where a landowner makes a contract with another person to cut and remove the timber from his land for sale or commercial purposes, the owner *must* pay the severance tax; for such contractor and his servants who actually sever the timber *act for the owner in the premises, and their act of severing* the timber *is the act of the owner.*" [11] (Emphasis added.)

---

[8] See note 11.

[9] One was for the individual owner who occasionally severs in order to build or repair improvements on the premises or for his own use and another for the "producer of switch ties" who hews them out entirely by hand.   208 Ark. 459, 463, 187 S. W. 2d 7, 10.

[10] The decision held the tax invalid as applied to the severance from lands held by the United States as original owner, though not as to those purchased with the state's consent.

[11] The effect of the quoted statement is emphasized by its context, in part as follows: "It is apparent then that the owner of lands, who cuts down trees for the purpose of building fences or repairing and constructing houses and other improvements on the land from the timber thus severed from the soil is exempted from paying the tax. It is equally evident that when the timber severed from the soil is

No reference was made in this case to the *Miller* case. In the absence of one we cannot assume that the court intended to overrule that decision or to destroy its rationalization or universal applicability, except for the specific exemptions. Not only the opinion in this case, as much by its omissions as by what it expressly rules, but also the Arkansas court's prior decisions, give every ground for believing that it did not intend either to apply the tax differently in this case than in any other or to overrule its

---

sold, it falls within the terms of the act, and the tax must be paid by someone. To illustrate: if the owner of timber lands desired to sever it for the purpose of clearing the land and putting it in cultivation and hired other persons to sever the timber for him, he would be required to pay the severance tax. If the owner should lease his land to another person for a designated number of years in order to have his lessee clear the land and put it in cultivation, and if the consideration for the lease in whole or in part was that the lessee should have the timber so removed from the land, the severance tax would have to be paid by such lessee. It will be noted that the language of the act is specific on this subject and provides that the severer or producer as he is called shall pay the tax. The act is very broad and comprehensive, and is levied upon all persons engaged in severing the timber from the soil for sale or commercial purposes, regardless of the purpose for which it is done. The only exception is that the tax shall not be paid where the timber severed is actually used in erecting or repairing structures and other improvements on the land. The application of the timber in part payment for clearing the land is a severing of it for commercial purposes, although the primary purpose of severing it is to enable the land to be put in cultivation. Where a landowner makes a contract with another person to cut and remove the timber from his land for sale or commercial purposes, the owner must pay the severance tax; for such contractor and his servants who actually sever the timber act for the owner in the premises, and their act of severing the timber is the act of the owner."

In a previous appeal in the same case, 160 Ark. 17, 254 S. W. 450, the court had sustained the act as constitutional on the theory that it was a privilege tax and not a property tax.

prior determinations of the ultimate nature, character and incidence of the tax.[12]

The majority seem to imply however that this may be exactly what was done; that perhaps the Arkansas court held that since the tax would be unconstitutional if, as the statute contemplates, it were directly placed upon the Government as owner, it would treat the tax as falling not on the Government but on the severer alone. As has been stated, nothing in that court's opinion suggests such a ruling. And if there were either a ruling or a sufficient suggestion of this sort, it would raise other serious questions, not considered by that court or here, concerning the validity of the tax. The effect of such a holding would seem to be to single out contractors with the Government for the imposition of a tax not placed on other severers. All other contractors, by the terms of the statute and the Arkansas decisions, would be required to pass the tax along to owners. Only contractors with the Government would not be allowed or required to do this. Thus to treat the tax as applicable only to the severer in this case, and the collection provisions affecting the owner as severable and inapplicable, would raise serious questions of discrimination, which neither the Arkansas court nor this Court has

---

[12] This view is sustained also by the court's expressed view that "Imposition of the tax here does not in any sense interfere with the Government's business." 208 Ark. 459, 468, 187 S. W. 2d 7, 12. The statement could mean that the tax would not be applied to the Government as to other owners, in which event a severance of the collection provisions would be implied. That it does not have this meaning is evidenced, I think, by the court's reliance on *James* v. *Dravo Contracting Co., supra*, where quite different statutory provisions were in question. The court's misapplication of the *Dravo* case was, I think, but a reflection of its implicit idea that the tax would be valid since it was collected immediately from the appellants, even though they might pass on its economic burden to the Government, without regard to how that might be done.

considered and which appellants are entitled to have determined.

It is true that they have not raised here any question of discriminatory enforcement. But this is because they had no reason to believe that the Arkansas court had applied, or would apply, the statute differently to them than to others or to anticipate the character of the ruling now made. It is doubtful, to say the least, that the Arkansas legislature could place a severance tax exclusively upon persons who sever resources from governmentally owned land. The same doubt would apply to the state court's effort to make the statute so effective, were it to undertake doing this. In my judgment it has not done so. Whether or not such an effort ultimately would be successful, appellants are entitled to be heard upon the question before that result is achieved. They should not be deprived of this opportunity through this Court's upholding of an ambiguously applicable statute or in advance of a decision by the only court which can remove the ambiguity. Because the Arkansas court has not passed upon applicability or severability of the collection provisions as they affect the owner, and because it has not determined the validity of the tax as applied in the light of such a determination, I think the cause should be remanded to it, so that the former questions may be authoritatively determined before we undertake to decide, upon the wholly speculative basis now presented, whether the tax as applied is valid.